Gustavo Magaña (SBN 305970)
The Law Office of Gustavo Magaña
4701 Patrick Henry Dr. Bldg 16 Suite 15F
Santa Clara, CA 95054
T: (408) 430-0411
F: (800) 650-9326
E: Gmaganaesq@gmail.com

Attorney for Plaintiff
Nicholas Ramirez

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (San Jose Division)

| | |
|---|---|
| NICHOLAS RAMIREZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN JOSE, STEVE MENDEZ in his individual and official capacity, DEJON PACKER in his individual and official capacity, GERARDO SILVA in his individual and official capacity, ALI MIRI in his individual and official capacity, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR VIOLATION OF CIVIL RIGHTS<br><br>JURY TRIAL DEMANDED |

1
COMPLAINT

**NATURE OF THE ACTION**

1.      This case arises from the San Jose Police Department's unlawful motor vehicle stop and seizure of Nicholas Ramirez. On 5/27/2021, Mr. Ramirez was driving in the East side of San Jose, CA. While driving, San Jose Police Officer Steve Mendez stopped Mr. Ramirez. Soon thereafter, San Jose Police Officers Gerardo Silva and Dejon Packer also arrived at the scene, aggressively approached and surrounded Mr. Ramirez's vehicle while demanding that he exit the car.

2.      Mr. Ramirez was shocked, terrified, and concerned for this safety but complied with the Officers' requests after Officer Mendez opened his driver's side door without permission. Mr. Ramirez also began to record the incident on his cellphone to document the encounter.

3.      Mr. Ramirez asked why he was pulled over, and the officers claimed he was allegedly looking at his phone while driving.

4.      The Officers then performed a pat search on Mr. Ramirez and aggravated a pre-existing injury while forcing his hands behind his back. The Officers also asked him about drugs, parole, weapons, and whether he was gang-affiliated. Further, upon information and belief, the Officers also attempted to take photos of Plaintiff's tattoos to document him as a potential gang member.

5.      Mr. Ramirez was shocked, humiliated, and mortified by the Officers' questions and actions.

6.      Mr. Ramirez called out the officers for racially profiling him and asked to speak to their supervisor

7. Once the supervisor, Lt. Ali Miri, arrived, Mr. Ramirez informed him of his concerns regarding racial profiling. Lt. Miri then attempted to justify the Officers' actions by claiming it was due to the area Mr. Ramirez was in and due to Mr. Ramirez's color of clothing.

8. As a result of the Defendant Officers' use of excessive force, unlawful seizure, and racial profiling, Mr. Ramirez suffered from an aggravation of his pre-existing injury as well as significant emotional distress.

9. After the unlawful detainer and seizure, the Officers let Mr. Ramirez leave without any citation.

10. Officer Steve Mendez used excessive force in his pat search and failed to respond to Mr. Ramirez's complaints or accommodate how he was performing his search to avoid unnecessary injury or pain.

11. Mr. Ramirez now seeks damages for the violations of his rights under the Fourth Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, the California Constitution, and State law.

**JURISDICTION**

12. The claims alleged herein arise pursuant to 42 U.S.C. § 1983, §1981, the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution.

13. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

14. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(2) because the unlawful acts, practices, and omissions giving rise to Plaintiff's claims occurred in the County of Santa Clara, which is within this judicial district.

15. On June 25, 2021, Mr. Ramirez timely filed an administrative tort claim with the City of San Jose. Subsequently, the City of San Jose issued a notice rejecting his claims on July 29, 2021. Mr. Ramirez has exhausted all available administrative remedies. Cal. Gov't. Code §§ 913, 945.6(a)(1).

**PARTIES**

16. Plaintiff, Mr. Ramirez, is a resident of the City of San Jose.

17. Defendant CITY of San Jose (hereinafter "CITY") is a political subdivision organized under the laws of California and a proper defendant in this action as to Mr. Ramirez's claims made pursuant to the California Tort Claims Act, Cal. Gov't Code §§ 810-996. Defendant CITY was at all relevant times the employer of Defendants Steve Mendez, Gerardo Silva, Dejon Packer, and Ali Miri. The San Jose Police Department is a department of the Defendant CITY. Upon information and belief, the CITY, through the San Jose Police Department, maintains an unlawful policy, custom, or practice of performing unlawful detentions, unreasonable and warrantless searches, and seizures, using excessive force, and racial profiling. This unlawful policy, custom, or practice is reinforced by the San Jose Police Department's supervision and, on information and belief, through its training.

18. At all times mentioned herein, Defendant Steve Mendez (hereinafter "MENDEZ") was employed as an officer for Defendant CITY. Defendant MENDEZ is sued individually and as a police officer for Defendant CITY. By engaging in the conduct described below, Defendant

MENDEZ acted under the color of law and in the course and scope of his employment for Defendant CITY. By engaging in the conduct described here, Defendant MENDEZ exceeded the authority vested in him as an officer under the United States Constitution and as an employee of the CITY.

19. At all times mentioned herein, Defendant Dejon Packer (hereinafter "PACKER") was employed as an officer for Defendant CITY. Defendant PACKER is sued individually and as a police officer for Defendant CITY. By engaging in the conduct described below, Defendant PACKER acted under the color of law and in the course and scope of his employment for Defendant CITY. By engaging in the conduct described here, Defendant PACKER exceeded the authority vested in him as an officer under the United States Constitution and as an employee of the CITY.

20. At all times mentioned herein, Defendant Gerardo Silva (hereinafter "SILVA") was employed as an officer for Defendant CITY. Defendant SILVA is sued individually and as a police officer for Defendant CITY. By engaging in the conduct described below, Defendant SILVA acted under the color of law and in the course and scope of his employment for Defendant CITY. By engaging in the conduct described here, Defendant SILVA exceeded the authority vested in him as an officer under the United States Constitution and as an employee of the CITY.

21. At all times mentioned herein, Defendant Ali Miri (hereinafter "MIRI") was employed as an officer for Defendant CITY. Defendant MIRI is sued individually and as a police officer for Defendant CITY. By engaging in the conduct described below, Defendant MIRI acted under the color of law and in the course and scope of his employment for Defendant CITY. By engaging in the conduct described here, Defendant MIRI exceeded the authority

vested in him as an officer under the United States Constitution and as an employee of the CITY.

22. Defendant CITY is liable for Plaintiff's injuries under California law and under the doctrine of respondeat superior. Liability under California law for public entities and public employees is based upon California Government Code §§815.2, 820, and 820.8.

## STATEMENT OF FACTS

23. On May 27, 2021, Mr. Ramirez was driving in the East side of San Jose and was heading to a Dr.'s appointment for a recent injury.

24. While driving, Mr. Ramirez was pulled over by Defendant MENDEZ. Mr. Ramirez promptly complied with the order to pull over.

25. Upon information and belief, Defendant MENDEZ then ran Plaintiff's information and called for back-up in the form of Defendants PACKER and SILVA.

26. Once Defendants PACKER and SILVA arrived on the scene, the officers aggressively surrounded Mr. Ramirez's vehicle, causing him to fear for his safety. Further, Defendant MENDEZ then opened Mr. Ramirez's driver-side door without permission causing Mr. Ramirez to be further apprehensive of physical harm.

27. Mr. Ramirez then exited his vehicle. However, due to the fear for his safety caused by the intimidation and show of force from the Defendants, Plaintiff began recording the encounter on his cellphone.

28. Thereafter, Defendant Mendez performed a pat search of Mr. Ramirez and interrogated him regarding drugs, gang affiliations, criminal history, and weapons. Additionally, upon information and belief, Defendant MENDEZ attempted to take photos of Plaintiff's tattoos to document him for possible gang affiliation.

COMPLAINT

29. Further, Defendant MENDEZ forced Plaintiff's hands behind his back and caused Mr. Ramirez significant pain while aggravating his pre-existing injury. Mr. Ramirez informed Defendant MENDEZ of his pain levels, and Defendant MENDEZ failed to ask how he could lessen the pain or show genuine concern for the pain he was inflicting on Plaintiff.

30. Mr. Ramirez exercised his civil rights and asked Defendant MENDEZ why he was pulled over. Defendant MENDEZ claimed that he allegedly saw Plaintiff looking down and assumed Plaintiff was using his cellphone.

31. Plaintiff then asked if Defendants could call their supervisor to inquire further why he was stopped and treated unfairly.

32. While waiting for supervisor Defendant MIRI, defendants PACKER and MENDEZ claimed they had not racially profiled Plaintiff and that the questions asked and actions taken were seemingly just routine procedures.

33. Further, Defendant MENDEZ then claimed he could cite Plaintiff for "inattentive driving" without providing Plaintiff a specific vehicle code section he could later lookup.

34. Once Defendant MIRI arrived at the scene, Plaintiff explained he wanted to make a complaint regarding the disparate and discriminatory treatment he had received. Defendant MIRI then provided Plaintiff with his badge number and asked the other officers also to do so.

35. Defendant MIRI then proceeded to justify the stop by referencing Plaintiff's clothing and the area he was stopped in, the East Side of San Jose.

36. Specifically, Defendant MIRI asked if Plaintiff was indeed an Atlanta Braves fan and that the area he was stopped in has a lot of Norteñeos in it.

37. Defendant MIRI then continued to claim that the totality of the circumstances led to the stop and that they have a job and use their training and experience in stops.

38. The Defendants then released Plaintiff without any citation.

39. Defendants thus harmed Mr. Ramirez. They violated his exercise and enjoyment of core constitutional rights, humiliated him, used excessive force, caused the loss of his liberty, refused and failed to provide him with reasonable accommodations for his physical injury, and caused him to suffer further physical injury and emotional distress.

40. At no time during the subject incident did Mr. Ramirez ever strike or attempt to strike the Defendant Officers in any way.

## DAMAGES

41. As a proximate result of Defendants' conduct, Mr. Ramirez suffered pain and physical injuries, including but not limited to pain in his shoulder and back.

42. As a further proximate result of the Defendants' conduct, Mr. Ramirez suffered emotional distress, humiliation, embarrassment, and loss of his sense of security, dignity, and pride.

43. The conduct of the individual Defendants was malicious, sadistic, wanton, and oppressive. Mr. Ramirez is therefore entitled to an award of punitive damages against the Defendants.

## CLAIMS FOR RELIEF

### First Cause of Action

Violation of the Fourteenth Amendment and 42 U.S.C. §1983

Against all Defendants

44. The foregoing allegations are realleged and incorporated herein.

45. Defendants, acting under color of law and in concert with one another, have engaged in a continuing pattern and practice of intentional race discrimination in pedestrian and traffic stops and subsequent investigations carried out throughout the city and heavily concentrated in the East Side of San Jose. In so doing, Defendants have caused the Plaintiff and others like him in the Latinx community to suffer deprivation of fundamental rights to liberty and be free from unlawful searches, detentions, and seizures on account of race and/or national origin. Specifically, Plaintiff was subjected to these violations because he is a young Latinx male driving in the East Side of San Jose and treated differently than other groups based on his race and perceived national origin. These rights violated Plaintiff's rights to equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. §1983.

46. Defendants acting under color of law, institute, authorize, tolerate, ratify, permit and acquiesce in policies, practices, and customs of detention, searches, and seizures that involve intentional race discrimination in the provision of law enforcement services.

47. Defendant's acts were done in knowing violation of Plaintiff's legal and constitutional rights and have directly and proximately caused Plaintiff's humiliation, mental pain, and emotional distress.

**Second Cause of Action**

Violation of 42 U.S.C. §1981

Against all Defendants

48. The foregoing allegations are realleged and incorporated herein.

COMPLAINT

49. Defendants, acting under color of law and in concert with one another, have denied Plaintiff his rights to full and equal benefit of the law and his right to be subject to like punishment under 42 U.S.C. §1981.

50. Defendants' acts were the result of discriminatory intent and were done in known violation of Plaintiff's legal and constitutional rights, without good faith, and have directly caused Plaintiff's humiliation, mental pain, and emotional distress.

51. Plaintiff was discriminated against based on his race and perceived national origin and denied the equal benefit of all laws and proceedings for the security of his person as enjoyed by white citizens and subjected to disparate treatment.

### **Third Cause of Action**

Violation of Government Code §§ 11135 and 11139

Against Defendant City of San Jose

53. The foregoing allegations are realleged and incorporated herein.

54. Government Code § 11135(a) prohibits race discrimination in any program or activity funded directly by the state or receives any financial assistance from the state.

55. State regulations implementing §11135 provide that no program receiving financial assistance from the State of California shall have an unjustified discriminatory impact or effect based on race.

56. the Defendant City of San Jose receives financial assistance from the State of California and thus is bound to abide by the terms of Government Code §11135 and its implementing regulations. The City of San Jose has received financial assistance/grants to address gang activity through programs such as Calgrip. Further, Defendant City of San Jose's "BEST"

program aimed at addressing gangs in the city admits to receiving and using both state and federal grants to run the program. (Reducing Gang-Related Crime in San Jose, An impact and Implementation Study of San Jose's Bringing Everyone Strengths Together (Best) Program, by Christian Geckleler, et al. March 18, 2019)

57. The policing methods of Defendant City of San Jose by and through its authorized agent Police Officers racially profile male Latinx citizens. As a result, the Defendant City of San Jose discriminates against Latinx citizens, including Plaintiff, as described herein.

58. Defendant City of San Jose's violation of Government Code §11135 and its implementing regulations/policies and practice have caused and will continue to cause Plaintiff to suffer tremendous harm and public humiliation in that he has been and will continue to be subjected to Defendant City of San Jose's race-based discrimination without judicial intervention.

## **Fourth Cause of Action**

Intentional Race Discrimination in Federally Funded Programs in Violation of Title VI of the 1964 Civil Rights Act

Against Defendant City of San Jose

59. The foregoing allegations are realleged and incorporated herein.

60. The Defendant City of San Jose intentionally discriminates against Latinx males, including Plaintiff, through its policing methods and practices, as described herein, in violation of §601 of Title VI of the Civil Rights Act of 1964, 42. U.S.C. §§ 2000d et seq.

61. The City of San Jose has also accepted funding/financial grants from the Federal Government, such as partnerships with the Department of Homeland Security. Further,

Defendant City of San Jose's "BEST" program aimed at addressing gangs in the city admits to receiving and using both state and federal grants to run the program. (Reducing Gang-Related Crime in San Jose, An impact and Implementation Study of San Jose's Bringing Everyone Strengths Together (Best) Program, by Christian Geckleler, et al. March 18, 2019)

62. Defendant City of San Jose's violation of Title VI has caused and will continue to cause Plaintiff to suffer tremendous harm and public humiliation in that he and others in the Latinx community have been and will continue to be subjected to Defendant City of San Jose's practice of race-based discrimination in the absence of judicial intervention.

### Fifth Cause of Action

Violation of Article 1, §7(a) of the California Constitution

Against all Defendants

63. The foregoing allegations are realleged and incorporated herein.

64. Defendants' above-described conduct violated Plaintiff's right not to be deprived of due process and equal protection of the laws under Article 1, § 7(a) of the California Constitution.

### Sixth Cause of Action

Violation of Article 1, § 13 of the California Constitution

Against all Defendants

65. The foregoing allegations are realleged and incorporated herein.

66. Defendant CITY, through Defendants MENDEZ, PACKER, and SILVA, and DOES 1-10, subjected Mr. Ramirez to false imprisonment and unreasonable seizure.

67. Defendants stopped and detained Mr. Ramirez for allegedly violating looking at his cellphone while driving, although this was never proven, and Mr. Ramirez was eventually released without citation.

68. Defendants MENDEZ, PACKER, and SILVA and DOES 1-10 deprived Mr. Ramirez of his freedom by subjecting him to unreasonable detention and by detaining him without a warrant and reasonable or probable cause, all without his consent.

69. As a result of the Defendants' actions, Mr. Ramirez was harmed, and each of the Defendants' actions was a substantial factor in causing that harm.

70. Furthermore, there is a real and actual controversy between the Plaintiff and Defendants regarding whether Defendants may undertake to act as described herein. Plaintiff contends that Defendants violated the United States and California Constitution and the United States and California laws. On information and belief, Defendants deny that their conduct violated the United States and California Constitutions and laws of the United States and California. Plaintiff fears he will again be subjected to such unlawful and unconstitutional actions and seeks a judicial declaration that Defendants' conduct deprived Plaintiff of his rights under the United States and California Constitutions and the laws of the United States and California.

71. In addition, the Plaintiff is informed and believes and thereon alleges that, unless enjoined, the Defendants will continue to engage in the unlawful acts and the policies and practices described above, in violation of the legal and constitutional rights of the Plaintiff and others who are so similarly situated.

## Seventh Cause of Action

Bane Act (Cal Civ. Code §52.1)

California Tort Claims Act, Cal. Gov't Code §§815.2, 820

Against Defendants MENDEZ, PACKER, and SILVA

72. The foregoing allegations are realleged and incorporated herein.

73. Defendant City, through Defendants MENDEZ, PACKER, and SILVA and DOES 1-10, intentionally interfered with Mr. Ramirez's exercise and enjoyment of his civil rights under the United States and California Constitutions.

74. Defendants intentionally interfered with and showed a reckless disregard for Mr. Ramirez's rights under the Fourth Amendment and Article I, Sections 10 and 13 of the California Constitution, to be free from unreasonably invasive or prolonged investigatory detention in the absence of probable cause. Defendants used threats and coercion to prevent Mr. Ramirez from insisting on his rights. They ultimately used excessive force and unlawfully detained him in retaliation against him for invoking his rights and questioning the unlawful stop.

75. Defendants intentionally interfered with and showed a reckless disregard for Mr. Ramirez's right to be free of unreasonable searches and seizures under the Fourth Amendment. Defendants used violence and acted violently with Mr. Ramirez to prevent him from exercising and enjoying his civil rights. They subjected him to an unreasonably invasive and prolonged investigatory detention, excessive force, and unlawful detention to retaliate against him for invoking that right.

76. Defendants intentionally interfered with and showed a reckless disregard for Mr. Ramirez's right under the Fourth Amendment and Article I, Section 13 of the California Constitution to be free from unlawful detention without probable cause. Defendants used threats and force to effect Mr. Ramirez's unlawful detention. Mr. Ramirez reasonably believed that they would commit violence against him if he did not physically submit to the unlawful detention. For example, the Defendant Officers surrounded Mr. Ramirez's vehicle after stopping him for allegedly looking at his cellphone and stood aggressively, making Plaintiff fear for his safety. Defendants also aggressively opened Mr. Ramirez's driver side without his consent. Further, while being handcuffed, Defendant MENDEZ used excessive force and aggravated Mr. Ramirez's pre-existing injury for which he was on the way to see a Doctor. Even after Mr. Ramirez informed Defendant MENDEZ of his injury and that he was hurting Plaintiff, Defendant MENDEZ intentionally failed to provide any reasonable accommodations, loosen his grip, or check on Plaintiff's safety.

77. As a direct and proximate result of each and every Defendants' violations of California Civil Code §52.1 and the Plaintiff's rights under the United States Constitution and the laws of the Constitution of the State of California, Plaintiff was harmed. Plaintiff sustained injuries and damages, and each of the Defendants' conduct was a substantial factor in causing Plaintiff's harm. Additionally, against each and every Defendant, the Plaintiff is entitled to relief as set forth above at paragraphs contained herein, including punitive damages against the Defendants in their individual capacities, including all damages and penalties allowed by California Civil Code §§52, 52.1, and California law, including costs, attorneys fees, civil penalties, and punitive damages. Further, Defendants' violations of Plaintiff's rights as guaranteed by the California Civil Code (§52.1) entitled Plaintiff to compensatory and

punitive damages, treble damages, as well as attorneys fees, all of which are provided for in the California Civil Code §§52, et seq., and are requested herein.

78. Since the conduct of Defendants MENDEZ, PACKER, and SILVA, and DOES 1-10, inclusive, occurred in the course and scope of their employment, Defendant CITY is therefore liable to Plaintiff pursuant to respondeat superior.

## EIGHTH CLAIM FOR RELIEF

Battery (Cal. Govt. Code §820 and California Common Law)

By Plaintiff against Defendant CITY, and Defendants MENDEZ, PACKER, and DOES 1-10

79. The foregoing allegations are realleged and incorporated herein.

80. Defendants MENDEZ, PACKER, and SILVA, while working as officers for the San Jose Police Department, and acting within the course and scope of their duties, intentionally and unlawfully stopped, detained, and used force on the Plaintiff without probable cause. Further, Plaintiff was suffering from a pre-existing injury at the time of the unlawful detention that was aggravated by Defendant MENDEZ'S aggressive manner of forcing Plaintiff's hands behind his back after stopping him for allegedly looking at his cellphone. Defendant MENDEZ used excessive force and aggravated Mr. Ramirez's pre-existing injury for which he was on the way to see a Doctor. Even after Mr. Ramirez informed Defendant MENDEZ of his injury and that he was hurting Plaintiff, Defendant MENDEZ intentionally failed to provide any reasonable accommodations, loosen his grip, or check on Plaintiff's safety. As a result of the actions of Defendants MENDEZ, PACKER, and SILVA, Plaintiff suffered severe pain and suffering, mental, and emotional distress. When Defendant MENDEZ was using excessive force on Plaintiff, Defendants PACKER and SILVA failed to assist Plaintiff

or ask Defendant MENDEZ to provide reasonable accommodations for Plaintiff's injuries. Defendants MENDEZ, PACKER, and SILVA had no legal justification for using force against the Plaintiff and said Defendants' use of force while carrying out their duties as San Jose Police Officers was an excessive and unreasonable use of force, particularly because the Plaintiff was unarmed and did not pose an immediate threat to the life of any individual, including any officer.

81.   As a direct and proximate result of the conduct of Defendant MENDEZ, PACKER, and SILVA, as alleged above, Plaintiff suffered emotional distress and physical pain.

113). Defendant CITY is vicariously liable for the wrongful acts of Defendant MENDEZ, PACKER, and SILVA under section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject them to liability.

### **Ninth Cause of Action**

Fourth Amendment (42 U.S.C. §1983)

Against Defendants MENDEZ, PACKER, and SILVA, and DOES 1-10

82.   The foregoing allegations are realleged and incorporated herein.

83.   Defendants MENDEZ, PACKER, and SILVA caused Plaintiff to be detained as they attempted to arrest Mr. Ramirez in violation of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. Ramirez under the Fourth Amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment.

COMPLAINT

84. As a result of the conduct of Defendants MENDEZ, PACKER, and SILVA, they are liable for Plaintiff's injuries because they were integral participants in the violations of Mr. Ramirez's rights.

85. The Plaintiff was detained without reasonable suspicion by Defendants as they unlawfully detained Mr. Ramirez without probable cause.

86. The conduct of Defendants MENDEZ, PACKER, and SILVA and DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and thus warrants the imposition of exemplary and punitive damages as to Defendants MENDEZ, PACKER, and SILVA and DOES 1-10

87. Accordingly, Defendants MENDEZ, PACKER, SILVA, and DOES 1-10 are each liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. §1983.

88. Plaintiff also seeks attorney fees under this claim.

## **Tenth Cause of Action**

Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)

By Plaintiff against Defendants MENDEZ, PACKER, and SILVA and DOES 1-10

89. The foregoing allegations are realleged and incorporated herein.

90. Defendants MENDEZ, PACKER, and SILVA and DOES 1-10 unreasonable use of excessive force deprived Mr. Ramirez of his right to be secure in his persons and property against unreasonable searches and seizures as guaranteed to the Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

91. As a result, Plaintiff suffered physical pain and emotional distress.

92. As a result of the conduct of Defendants MENDEZ, PACKER, and SILVA and DOES 1-10, they are liable for Mr. Ramirez's injuries because they were integral participants in the excessive force. Specifically, Defendant MENDEZ used excessive force while forcing Plaintiff's hands behind his back and aggravating his pre-existing injury. Additionally, defendant MENDEZ failed and chose to ignore Plaintiff's plea not to hurt him or provide reasonable accommodations. Defendants PACKER and SILVA also failed to assist Plaintiff or intervene and ask Defendant SILVA to loosen his grip or check on Plaintiff's health.

93. The use of excessive force was unreasonable under the circumstances. Thus, Defendants MENDEZ, PACKER, SILVA, and DOES 1-10 deprived Mr. Ramirez of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

94. The conduct of Defendants MENDEZ, PACKER, and SILVA and DOES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of the Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to Defendants MENDEZ, PACKER, and SILVA and DOES 1-10.

95. Plaintiff also seeks attorney fees under this claim.

#### Eleventh Cause of Action

Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. §1983)

By Plaintiff Against Defendant CITY

96. The foregoing allegations are realleged and incorporated herein.

97. While acting under the color of state law and within the course and scope of their employment as police officers for the Defendant CITY police department, Defendants MENDEZ, PACKER, SILVA, AND MIRI'S use of excessive force, unlawful detention, and

racial profiling/discrimination deprived Mr. Ramirez of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including his right to be free from unreasonable search and seizure and equal treatment under the law.

98. Upon information and belief, Defendants MENDEZ, PACKER, SILVA, AND MIRI acted pursuant to an expressly adopted official policy or longstanding practice or custom of the Defendant CITY.

99. Upon information and belief, Defendants MENDEZ, PACKER, SILVA, AND MIRI were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with either the detention, excessive force, and racial profiling/discrimination based on the Plaintiff's race.

100. Defendants deprived Mr. Ramirez of the rights and liberties secured to him by the Fourth Amendment and Fourteenth Amendment to the United States Constitution, in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and Plaintiff's, and persons in their class, situation, and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a) Employing and retaining as police officers and other personnel, including Defendants MENDEZ, PACKER, SILVA, AND MIRI, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY Police Department Policies;

(b) Of inadequately supervising, training, controlling, assigning, and disciplining CITY Police Officers, and other personnel, whom Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(c) By failing to adequately train officers, including Defendants MENDEZ, PACKER, SILVA, AND MIRI, and failing to institute appropriate policies, regarding the use of excessive force and unreasonable searches and seizures; reasonable accommodations for citizens with physical injuries, and

(d) By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, racial profiling, and targeting citizens of Latinx descent, demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of Defendant CITY were done with deliberate indifference to individuals' safety and rights, and

(e) By failing to adequately discipline CITY police officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(f) Maintaining a policy of inaction and an attitude of indifference towards citizen complaints of excessive force and false arrests/unlawful detentions, and racial profiling, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in the use of false arrests/unlawful detention, excessive force, and racial profiling.

(g) Failing to institute or adequately address inherent problems with the CITY's police officers' disparate treatment, unlawful detentions, arrests, racial profiling, and use of force on

citizens of Latinx descent. Specifically, Defendant CITY, by and through its Police Officers, discriminates against citizens of Latinx descent.

101. By reason of Defendants' aforementioned policies and practices, Plaintiff was injured and subjected to pain, suffering, and emotional distress.

102. Defendant CITY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite knowing as stated above, these Defendants condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said Defendant's also acted with deliberate indifference to the foreseeable effects and consequences of these policies concerning Plaintiff's constitutional rights and other individuals similarly situated.

103. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant CITY and DOES 1-10 acted with an intentional, reckless, and callous disregard for Plaintiff's health and constitutional rights. Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, extremely offensive, and unconscionable to any person of normal sensibilities.

104. The aforementioned unconstitutional customs, practices, and policies, in addition to the ratification of the deficient customs, practices, and policies, are evidence by the number of lawsuits featuring the same officers, objective studies showing that Defendant CITY by and through its Officers uses force and arrests citizens of Latinx descent at a rate disproportionately higher than it does white citizens. As well as numerous local news articles calling out Defendant CITY'S discriminatory practices. The following court cases are examples of continued misconduct by officers working for the San Jose Police Department:

(a) Sanderlin v. City of San Jose, et al., case number: 5:2020cv04824, in this case, Mr. Sanderlin is suing the officers for using excessive force while he was peacefully protesting. Defendants struck Mr. Sanderlin in the groin with rubber bullets. Mr. Sanderlin's case is notable because he has previously worked with the San Jose Police Department to teach officers about bias.

(b) Stephens v. City of San Jose, et al., case number: 5:2015cv03454. In this case, Mr. Stephens, an African-American, sued the City of San Jose for racial profiling. Mr. Stephens was stopped while driving with his two minor daughters and had officers pull guns on them. Officers informed Mr. Stephens they had received reports of a "suspicious black man" and had to "check it out."

(c) NAACP of San Jose/Silicon Valley, et al. v. City of San Jose, et al., case number: 4:21-cv-01705. In this class action case, Plaintiffs are suing for damages, injunctive, and declaratory relief arising from acts by SJPD at the George Floyd Protests in late May 2020. The complaint alleged excessive force and a pattern, policy, and practice of discrimination based on race, religion, and national origin. The complaint also alleges that SJPD targeted people of color during arrests at protests. Specifically, out of 176 arrests related to the demonstrations on May 29-June 2 and 5, 2020, only 34 or 19.3% were of Whites, whereas 96 or 54.5% were Latinx, and 46 or 26%, other people of color. Whereas San Jose is only 32.8% Latinx and is 26.7% White.

(d) Fukijawa v. City of San Jose, et al. (2012), in this case, David Fukiajwa sued officers based on a 2011 traffic stop arrest wherein the officers used excessive force and repeatedly tased him. Thereafter, the officers charged Mr. Fukijawa with resisting arrest. However, the district attorney's office later dropped these charges.

(e) Paulino v. City of San Jose, et al., case number: 16-cv-02642, in this case, Eliel Paulino, a Latinx Spanish speaker, sued after SJPD officers pulled him over during a traffic stop and thereafter repeatedly struck him with a baton. The officers then charged Mr. Paulino with resisting arrest. The district attorney's office later dropped these charges. This civil case was later settled for $700,000.00. Notably, Defendant SILVA was also a defendant in this case.

(f) Alemayehu v. City of San Jose, et al., case number: 5:14-cv-01738, in this case, Dawit Alemayehu sued after SJPD officers used excessive force by throwing him onto the ground and causing brain damage. Thereafter, the officers charged Mr. Alemayehu with excessive force. The district attorney's office later dropped these charges. This civil case was later settled for $525,000.00

(g)     Santa Cruz, et al, v. City of San Jose, et al., case number: 5:2020cv00351, in this case, Ms. Santa Cruz and Mr. Tukuafu are suing SJPD officers for excessive force wherein the officers tased repeatedly struck both Plaintiff's with batons after they questioned the acts and behavior of the arresting officers. Thereafter and upon information and belief, the officers charged Ms. Santa Cruz and Mr. Tukuafu, but the District Attorney's office refused to file charges.

(h) Marin v. City of San Jose, et al., case number: 5:2021cv06372. In this case, Ms. Marin was pulled over by an SJPD Officer during a traffic stop and told to kneel on the ground. Upon information and belief from video footage, Ms. Marin was in the process of kneeling and being compliant when an SJPD officer kicked her in the stomach and then dragged her across the floor in front of minor children in the vehicle.

105. Furthermore, Defendants' policies, practices, and customs implemented and maintained and still tolerated were affirmatively linked to and were a significantly influential force behind Plaintiff's injuries. Prominent examples of objective evidence, statements from the SJPD, statements from the San Jose Independent Police Auditor, and media articles regarding similar practices are as follows:

I.) Data collected and distributed by the San Jose Police Department from January 2015-2019 indicates 290 use of force incidents wherein obstruction of justice was the most serious crime charged. San Jose Police Department; Https://www.sjpd.org/records/crime-stats-maps/force-analysis- data) Further, 165 of those individuals arrested were injured, amounting to a 57% injury rate. (Id.)

Injuries ranged from broken bones, canine bites, chemical irritation, cuts/punctures/blood, and bruises/scrapes. (Id.) Moreover, when these arrests were broken down even further, the citizens most likely to suffer from use of force when the most serious charge was obstructing justice are Male (84%), Latino (55%), and under 39 years of age (62%), all of which perfectly describe the Plaintiff

II.) Former Independent Police Auditor Aaron Zisser expressed concerns about how whites had safer interactions with police than minorities, including Latinx citizens. Specifically, "In a review of more than 100 cases from 2015 to 2017, officers were more likely to take white suspects to the hospital and their minority counterparts to jail in use-of-force cases when no charges are filed." (San Jose Inside, by Jennifer Wadswortth, More SJPD Officers disciplined despite fewer Citizen Complaints, May 21, 2018).

Further, Mr. Zisser also "pointed to an independent study from the University of Texas, El Paso in 2017, which showed San Jose police officers were 2.4 times more likely to handcuff Latino residents than white people during a traffic stop." (San Jose Spotlight, by Mauricio La Plante, "How do you fix San Jose Police troubles? Two former police watchdogs weigh in" July 11, 2020)

III.) Additionally, previous Independent Police Auditor and retired Judge, Hon. Ladoris Cordell (Ret.) stated regarding recent issues in 2020 that the "department's recent scandals point to a larger problem of systemic racism. She also indicated that Mayor Sam Liccardo and Police Chief Eddie Garcia have yet to explicitly identify that problem. (San Jose Spotlight, by Mauricio La Plante, "How do you fix San Jose Police troubles? Two former police watchdogs weigh in" July 11, 2020)

IV.) Moreover, a report by the Mercury News in 2015 detailed how San Jose Police department officers "pull over, searched, curb-sat, cuffed or otherwise detained Blacks and Latinos least year at far higher percentages than their share of this city's population, an analysis of traffic-stop data by this newspaper found. Yet the stops seldom led to arrests or evidence of crimes." (SJPD date show San Jose Cops detained greater percentage of Blacks, Latinos by Robert Salonga, Tracey Kaplan, and Leigh Poitnger, 5/9/2015, San Jose Mercury News)

In response to the troubling statistics, then chief Larry Esquivel used the common claim and language of policing "high-crime areas such as East San Jose, which is heavily Latino." Chief Esquivel further elaborated by stating, "gang activity has been a huge focus. Within that, there are more certain areas or people who gravitate toward gangs."

Specifically, the Mercury News highlighted that in the first nine months of 2014, Latinos made up 57% of the traffic stops compared with being 33% of the population. Additionally, once stopped, Latinos were significantly more likely to be ordered out of their vehicles, frisked, and have their cars searched; more than three-quarters of those subjected to such treatment by San Jose police were black or Latino. Only 6 percent of those stopped were arrested, including 3 percent of Asians, 5 percent of whites, and 7 percent of blacks and Latinos. While few searches

of those stopped turned up evidence, whites were slightly more likely to be carrying drugs or other contraband (16 percent) than Latinos (12 percent) and blacks (14 percent). (Id.)

V.) In 2009, a Mercury News investigation revealed the Latinx community was being arrested for conduct crimes at far higher rates than other large cities around the state. Specifically, though at the time, San Jose's population was less than 1/3 Latinx, about 57% of those charged by San Jose Police with resisting arrest, and more than 70% of those charged with disturbing the peace were Latinx. (Policing in San Jose: Strict enforcement of 'conduct crimes'; are Latinos targeted? By Sean Webby, 4/9/2009, San Jose Mercury News) Further, the article featured an analysis of the data by Shaun Gabbidon, a Pennsylvania State University Criminologist who has focused his career on studying race in crime and policing. Mr. Gabbidon stated:

> "The situation in San Jose has all the makings of racial profiling," said Shaun Gabbidon, a Pennsylvania State University criminologist who has focused his career on studying race in crime and policing."

> "Are Hispanics getting differential treatment because they are perceived as a threat?" Gabbidon asked. "Because of an overexaggerated fear of Hispanics, the police might be overreacting to situations that do not warrant formal police action." (Id.)

VI. Additionally, an investigation by The Mercury News reported in 2007 that San Jose police were more likely to use force against Blacks and Latinx citizens than against criminal suspects from other ethnic groups. ("San Jose Police more likely to use force against blacks, latinos" by Rodney Foo and Sean Webby, 03/21/2007, The San Jose Mercury News)

VII.     Further, Defendant City and the Police Department have made claims attempting to justify or explain away allegations of racial profiling and explain why Latinos have been arrested or stopped at higher rates. In 2008, in response to claims that Defendant City was arresting Latinx citizens at higher rates for public drunkenness than other similar-sized cities. Defendant City claimed that the majority of the arrests of Latinx citizens were from out of town and were Latinx who were "flooding" downtown. ("Statistics contradict San Jose Police on Public-Drunkenness Arrests" by Sean Webby, 12/18/2008, The San Jose Mercury News)

However, the data revealed that the majority of people arrested downtown for public drunkenness were not Latinx and that most Latinx citizens were arrested outside downtown than in its city core. (Id.) Further, the data showed that the majority of those Latinx citizens who were arrested for being "dangerously drunk" downtown were from San Jose. (Id.) In response, then-mayor Chuck Reed stated, "It's pretty clear to me that we have some problems that need to be fixed…if the police department is making attitude arrests or they are racially profiling, I expect the Chief to remedy those things." (Id.) When asked if he believed there was racial profiling, mayor Chuck Reed also stated, "It might be happening. We have anecdotal evidence."

VIII. Finally, Defendant CITY has a long history of using coded language that is not overtly racist or discriminatory in oppressing, excluding, and discriminating against minority communities. Such language is more subtle and does not involve direct racial slurs. Instead, it focuses on generalized terms that still affect and discriminate against minority communities, including the Latinx community, without explicitly saying so. For example, addressing "high-crime areas" is a common refrain. These concepts then become catch-all terms to explain away discrimination without addressing the bias within the disparity in arrests.

A perfect and prominent example is the recent apology by Defendant CITY of San Jose to the Chinese American community for its involvement, discrimination, oppression, and failure to prevent the burning down of San Jose's China Town in 1887. ("Tremendous Feeling of Justice as San Jose Apologizes for Discrimination" by Natasha Chen, https://www.cnn.com/2021/10/01/us/san-jose-racism-apology-chinese/index.html) As an example, a declaration passed by Defendant CITY in 1887 proclaimed the China Town to be:

> "A public nuisance, injurious to private property adjacent thereto, dangerous to the public health and welfare all citizens who live and have homes in its vicinity, and a standing menace to both public and private morals, peace, quiet and good order, and etc."(Id.)

What is important to note is the lack of direct racial slurs or overt racism. The declaration's language was framed in terms of alleged public health and the welfare of the general community. Additionally, Mayor Sam Liccardo ended the apology to the Chinese American community by acknowledging a history of violence against other minority groups, including the Latinx community. ("San Jose apologizes to Chinese American community for a 'century of discriminatory actions'" by Catherine Thorbecke, 9/30/21, https://abcnews.go.com/US/san-jose-apologizes-chinese-american-community-century-discriminatory/story?id=80325638)

IX.)    Further, in 1999, a study found that the San Jose Police department was stopping Latinx drivers at a disproportionate rate to their total population. Specifically, Latinx drivers were 31% of the population but represented 43% of the people stopped. ("Police and Community React to San Jose Traffic Stop Data", 12/18/1999, ACLU, https://www/aclu.org/press-releases/police-and-community-react-san-jose-traffic-stop-data.)

106. The aforementioned policy, practices, and pattern was the moving force behind the constitutional violations suffered by Plaintiff.

107. By reason of Defendant's aforementioned acts and omission, Plaintiff suffered physical pain and emotional distress.

108. Accordingly, Defendant is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

109. Plaintiff seeks attorney fees under this claim.

**Twelfth Cause of Action**

Intentional Infliction of Emotional Distress

Against All Defendants

110. The foregoing allegations are realleged and incorporated herein.

111. Defendant CITY by and through its employees and authorized agents MENDEZ, PACKER, SILVA, MIRI, and DOES 1-10 caused Mr. Ramirez to suffer from severe emotional distress.

112. The conduct of Defendants MENDEZ, PACKER, SILVA, and MIRI was outrageous and was intentional and or done with reckless disregard that Mr. Ramirez would suffer emotional distress. Specifically, Mr. Ramirez was unlawfully detained without probable cause, was surrounded by aggressive officers, was ordered out of his vehicle in public and forced to submit to an arbitrarily prolonged detention, was interrogated about his clothing, drugs, weapons, and gang affiliations based on his race and perceived national origin. Plaintiff was also subjected to excessive force when his pre-existing injury was aggravated, and the officers

surrounded his vehicle. As a result, Mr. Ramirez was forced to feel like a second-class citizen and effectively treated by Defendants as a class apart.

113.    Plaintiff suffered severe emotional distress, and the conduct of Defendants MENDEZ, PACKER, SILVA, and MIRI was a substantial factor in causing Plaintiff's severe emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.) Award Plaintiff general, special, and compensatory damages in an amount to be proven at trial.

2.) Award Plaintiff punitive damages against individually named Defendants, and each of them, for their extreme, outrageous conduct in complete disregard for Plaintiff's rights.

3.) For actual damages, civil penalties, and attorneys fees under CA civil Codes §52, §52.1

4.) Award Plaintiff statutory damages and/or attorney's fees against all Defendants as allowed by 42. U.S.C. §1988.

5.) All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42. U.S.C. §1983 and §12205, Cal. Code Civ. Proc. §1201.5, and as otherwise may be allowed by California and/or Federal law;

6.) Issue a declaratory judgment that Defendants' conduct as complained herein was a violation of Plaintiff's rights under the United States and California Constitutions and the Laws of the United States and California;

7.) Injunctive relief, including but not limited to the following:

a. And order prohibiting Defendants and their law enforcement officers from unlawfully interfering with the rights of Plaintiff and others to be free from unreasonable searches and seizures and excessive and unreasonable force;

b. An order requiring Defendants institute and enforce appropriate and lawful policies and procedures for stopping and detaining individuals, particularly persons of color and/or Latinx descent;

c. An order requiring Defendants to train their law enforcement officers concerning racial profiling of Latinx citizens and other communities of color.

8.) Grant Plaintiff such other and further relief as the Court deems just and proper.


Dated: 10/18/21                                    Law Office of Gustavo Magaña

                                                     __/s/ Gustavo Magaña____

                                                     Attorney for Plaintiff

JURY DEMAND: Plaintiff demands a trial by jury in this matter, pursuant to FRCP 38(a).

                                                     Law Office of Gustavo Magaña

Dated: 10/18/21                                     _/s/ Gustavo Magaña____

                                                     Attorney for Plaintiff