UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICHOLAS RAMIREZ,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF SAN JOSE, et al.,<br><br>　　　　　Defendants. | Case No. 21-cv-08127-VKD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 12 |

Plaintiff Nicholas Ramirez sues the City of San Jose and defendant officers Steve Mendez, Dejon Packer, Gerardo Silva, and Ali Miri for alleged violations of his federal constitutional and statutory rights. Mr. Ramirez also asserts several state law claims. Defendants move to dismiss Mr. Ramirez's first amended complaint (Dkt. No. 6) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 12. Having considered the parties' moving papers and arguments made at the hearing on January 25, 2022, the Court grants the defendants' motion with leave to amend.

I.   **BACKGROUND**

For purposes of this motion, the Court accepts as true the following factual allegations, which are taken from Mr. Ramirez's first amended complaint ("FAC"). Dkt. No. 6.

On May 27, 2021, Mr. Ramirez was driving in East San Jose when he was stopped by defendant Officer Mendez. Dkt. No. 6 ¶¶ 1, 23–24. Officer Mendez called for backup, and defendants Officer Packer and Officer Silva arrived on the scene. *Id.* ¶¶ 25–26. Officer Mendez opened the driver's side door of Mr. Ramirez's car and asked him to exit the vehicle, which he did. *Id.* ¶ 26. Officer Mendez performed a pat search of Mr. Ramirez and asked him questions

1   regarding drugs, weapons, his criminal history, and whether he was affiliated with a gang. *Id.* ¶
2   28. Officer Mendez also attempted to take photos of Mr. Ramirez's tattoos. *Id.*

During the search, Officer Mendez "forced [Mr. Ramirez's] hands behind his back," which Mr. Ramirez says caused him significant pain and aggravated a preexisting injury. *Id.* ¶ 29. Mr. Ramirez informed Officer Mendez that he was in pain, but Officer Mendez did not ask how he could reduce the pain or otherwise show concern for Mr. Mendez's condition. *Id.* When Mr. Ramirez asked Officer Mendez why he had been stopped, Officer Mendez responded that he had seen Mr. Ramirez looking down and assumed that Mr. Ramirez was using his cellphone while driving. *Id.* ¶ 30.

Mr. Ramirez accused the officers of racially profiling him and asked to speak to their supervisor. *Id.* ¶ 6. When defendant Officer Miri, the supervising officer, arrived on the scene, Mr. Ramirez indicated he wished to make a complaint about how he had been treated. *Id.* ¶ 34. Officer Miri and the other officers provided their badge numbers to Mr. Ramirez. *Id.* Mr. Ramirez says that Officer Miri asked if Mr. Ramirez was an Atlanta Braves fan (apparently referring to Mr. Ramirez's clothing) and remarked that "the area he was stopped in has a lot of Norteñeos [*sic*] in it," which Mr. Ramirez understood as Officer Miri's effort to justify Officer Mendez's stop. *Id.* ¶¶ 7, 35–36. Defendants then released Mr. Ramirez and did not cite him for any violations. *Id.* ¶ 38.

Mr. Ramirez filed a complaint in this action on October 18, 2021. Dkt. No. 1. He filed the FAC a week later on October 27, 2021. Dkt. No. 6. The FAC asserts the following claims:

- violation of his Fourteenth Amendment right to equal protection against the individual defendants, 42 U.S.C. § 1983. *Id.* ¶¶ 44–47.
- violations of his Fourth Amendment rights against the individual defendants for unlawful search and detention and for use of excessive force, 42 U.S.C. § 1983. *Id.* ¶¶ 82–88, 89–95.
- violation of his Fourth and Fourteenth Amendment rights against the City, 42 U.S.C. § 1983. *Id.* ¶¶ 96–109.
- intentional discrimination against the City based on his race, Title VI of the 1964 Civil

2

1   Rights Act. *Id.* ¶¶ 59–62.

2   - discrimination based on race and national origin against all defendants, 42 U.S.C.
3     § 1981. *Id.* ¶¶ 48–51.
4   - six state law claims for violations of California Government Code §§ 11135 and
5     11139, Sections 7 and 13 of Article I of the California Constitution, the Bane Act, and
6     the Ralph Act, as well as for battery and intentional infliction of emotional distress.

Defendants move to dismiss all claims for failure to state a claim and also argue that the individual defendants are entitled to qualified immunity. Dkt. No. 12.

## II.     LEGAL STANDARD

### A.     Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-

3

defendant-unlawfully-harmed-me accusation." *Id*. at 678.

### B.     Qualified Immunity

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The court must consider two issues: whether the facts that a plaintiff has alleged describe a violation of a constitutional right, and whether the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson,* 555 U.S. at 232. A court has discretion to decide the order in which it will decide each issue. *Id.* at 236.

However, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Id*. at 238–239. The Ninth Circuit has suggested that "while government officials have the right . . . to raise and immediately appeal the qualified immunity defense on a motion to dismiss, the exercise of that authority is not a wise choice in every case." *Wong v. U.S.*, 373 F.3d 952, 957 (9th Cir. 2004).

## III.    DISCUSSION

The Court first considers defendants' Rule 12(b)(6) challenge to Mr. Ramirez's federal claims, and then considers their challenge to his state claims. Because the Court will permit Mr. Ramirez to amend the operative complaint, the Court does not address the issue of qualified immunity at this time.

### A.     Federal Claims

#### 1.     Claim 1: Fourteenth Amendment (Equal Protection)

Mr. Ramirez claims that each of the individual defendants violated his Fourteenth Amendment right to equal protection.[1] Dkt. No. 6 ¶¶ 44–47. He says that he was stopped because he is "a young Latinx male driving in the East Side of San Jose." *Id.* ¶ 45. He further alleges that

---

[1] Mr. Ramirez captions his first claim for relief as against "all defendants." However, the City of San Jose may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Because Mr. Ramirez separately pleads a claim for relief against the City for enforcement of an allegedly unconstitutional policy of racial profiling (Dkt. No. 6 ¶¶ 96–109), the Court construes Mr. Ramirez's first claim as brought only against the individual defendants.

4

1 defendants have "engaged in a continuing pattern and practice of intentional race discrimination in
2 pedestrian and traffic stops and subsequent investigations carried out throughout the city and
3 heavily concentrated in the East Side of San Jose." *Id.* Mr. Ramirez claims that he was "treated
4 differently than other groups based on his race and perceived national origin." *Id.*

5         To state a claim for violation of the equal protection clause of the Fourteenth Amendment,
6 a plaintiff must plead facts that plausibly show that a defendant's conduct had a discriminatory
7 effect and was motivated by a discriminatory purpose. *Rosenbaum v. City and Cty. of San*
8 *Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608
9 (1985)). Here, to allege a discriminatory effect, Mr. Ramirez must plead facts showing that Latinx
10 men (or however he chooses to define the protected class) were subjected to the conduct of which
11 he complains while "similarly situated individuals" not in the protected class were not subjected to
12 that conduct. *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). To allege
13 discriminatory purpose, Mr. Ramirez must plead facts showing that defendants "selected or
14 reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its
15 adverse effects upon an identifiable group." *Id.* (quoting *Wayte*, 470 U.S. at 610); *see also Iqbal*,
16 556 U.S. at 676–77 (purposeful discrimination involves a decisionmaker's undertaking a course of
17 action because of, not merely in spite of, the action's adverse effects upon an identifiable group).

18         Mr. Ramirez's equal protection claim fails for at least three reasons. First, it is not clear
19 what conduct forms the basis for this claim, and whether the same allegations apply to each
20 individual defendant. Only Officer Mendez initiated the stop; the others arrived at the scene as
21 back up (Officers Silva and Packer) or after Mr. Ramirez asked to speak to a supervisor (Officer
22 Miri). Officers Mendez, Silva, and Packer were present when Mr. Ramirez was detained and
23 searched (although it is unclear from the FAC which officer did what), but Officer Miri apparently
24 did not arrive until later. The FAC does not give each defendant fair notice of the conduct Mr.
25 Ramirez believes constitutes an equal protection violation.

26         Second, to the extent Mr. Ramirez's claim is based on a "pattern and practice" of
27 discriminatory conduct in pedestrian and traffic stops and other law enforcement activities, the
28 FAC pleads no facts regarding any such pattern or practice in support of the first claim.

United States District Court
Northern District of California

Third, the FAC does not clearly allege facts showing that Mr. Ramirez was stopped or detained "because of" his race and perceived national origin. Mr. Ramirez acknowledges that, when asked, defendants told him that he was stopped because he was looking down, possibly at his cellphone, while driving. Mr. Ramirez does not allege that he was *not* looking down or at his cellphone while driving. Even if the Court accepts as true Mr. Ramirez's allegations that the officers made comments to him suggesting that they believed his clothing, race or perceived national origin, and location caused them to suspect he was a gang member, these allegations are insufficient to show a discriminatory purpose if the officers, in fact, stopped and detained Mr. Ramirez because he was looking down while driving.

Accordingly, the Court concludes that Mr. Ramirez fails to state a claim against the individual defendants for violation of his Fourteenth Amendment right to equal protection.

### 2. Claim 9: Fourth Amendment (Unreasonable Search/Seizure)

Mr. Ramirez alleges a violation of his Fourth Amendment right to be free from an unreasonable search or seizure against the individual defendants. Dkt. No. 6 ¶¶ 82–88. Specifically, Mr. Ramirez alleges that he "was detained without reasonable suspicion by Defendants." *Id.* ¶ 85.

"An investigatory traffic stop 'is permissible under the Fourth Amendment if supported by reasonable suspicion." *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 693 (1996)). In deciding whether an officer has a reasonable suspicion that justifies stopping a person's car, courts must "consider the totality of the circumstances" of a case to see whether the officer had a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). "Claims of unreasonable seizure, unlawful detention, unlawful arrest, and excessive force are all analyzed according to [an] objective standard, in light of the facts and circumstances confronting the police officer, without regard to their underlying intent or motivation." *Smith v. Cty. of Santa Cruz*, No. 13-CV-00595

LHK, 2014 WL 3615492, at *7 (N.D. Cal. Jul. 22, 2014) (citation and internal quotation marks omitted). Accordingly, Mr. Ramirez must plead facts that would allow this Court to conclude "that it is plausible, as opposed to merely possible, that there was no probable cause or reasonable suspicion for [the officers] to detain [him]" such that the search and detention were "objectively unreasonable in light of the circumstances." *Id.* (citing *Iqbal*, 566 U.S. at 678).

Mr. Ramirez has not done so here. As with claim 1, it is not clear what conduct forms the basis for this claim, and whether the same allegations apply to each individual defendant. Mr. Ramirez alleges that "[d]efendants MENDEZ, PACKER, and SILVA caused Plaintiff to be detained as they attempted to arrest Mr. Ramirez." Dkt. No. 6 ¶ 83. Elsewhere, however, the FAC seems to indicate that Officer Mendez was the only officer who interacted directly with Mr. Ramirez, and that Officers Packer and Silva provided back up. *Id.* ¶¶ 26, 28-29.

Further, Mr. Ramirez's bare allegation that he was "detained without reasonable suspicion" is conclusory and is not supported by any allegation of fact. As noted above, Mr. Ramirez does not allege that he was not looking down or at his cellphone while driving, even though he acknowledges that Officer Ramirez states this was the reason for the stop—a reason that would be sufficient to support a reasonable suspicion that Mr. Ramirez was engaged in misconduct.

Accordingly, the Court concludes that Mr. Ramirez fails to state a claim against the individual defendants for violation of his Fourth Amendment right to be free from unreasonable searches or seizures.

### 3. Claim 10: Fourth Amendment (Excessive Force)

Mr. Ramirez also alleges a violation of his Fourth Amendment right to be free from the use of excessive force. Dkt. No. 6 ¶¶ 89–95. Specifically, he alleges that defendant Officer Mendez "used excessive force while forcing Plaintiff's hands behind his back and aggravating his pre-existing injury" and "chose to ignore Plaintiff's plea not to hurt him or provide reasonable accommodations." *Id.* ¶ 92. He alleges that defendant Officers Packer and Silva "failed to assist Plaintiff or intervene and ask Defendant SILVA to loosen his grip or check on Plaintiff's health." *Id.*

The Supreme Court has recognized that "the right to make an investigatory stop

necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, [citation omitted] violates the Fourth Amendment." *Id.* Whether an officer has used excessive force requires the court to balance "the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396). The Court examines "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396).

Defendants argue that Mr. Ramirez's allegations are insufficient as a matter of law because the force alleged is necessarily "de minimis." Dkt. No. 12 at 10. However, this argument is unpersuasive. As Judge Ryu has observed, "a significant injury is not a threshold requirement for stating an excessive force claim," and "even tight handcuffing can constitute excessive force." *Gillespie v. Torres*, No. 20-cv-03735-DMR, 2020 WL 6710090, at *3 (N.D. Cal. Nov. 16, 2020) (citing *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000)). In *Gillespie*, Judge Ryu concluded that a plaintiff had not adequately pled an excessive force claim where the plaintiff simply alleged that she was handcuffed and that her phone was taken, without any allegation that defendant officers were unnecessarily rough in applying the handcuffs, that the handcuffs were too tight, or that she suffered any pain or injury as a result. *Id.* By contrast, Mr. Ramirez alleges that at least one defendant's use of force caused him pain and exacerbated a pre-existing injury, and that at least some of the individual defendants stood by and did not respond when Mr. Ramirez complained that the use of force was causing him pain. Dkt. No. 6 ¶¶ 29, 92; *cf. Hughey v. Drummond*, No. 2:14-cv-00037-TLN-AC, 2017 WL 590265, at *8, *13 (E.D. Cal. Feb. 14, 2017) (granting motion to dismiss excessive force claim where plaintiff did not allege physical injury or

8

"unheeded complaints about excessive tightness"). For this reason, the Court declines to dismiss Mr. Ramirez's excessive force claim on this ground at the pleading stage.

The difficulty with Mr. Ramirez's Fourth Amendment claim based on use of excessive force is that it does not clearly identify which defendants used what force against Mr. Ramirez. Mr. Ramirez alleges that Officer Mendez forced Mr. Ramirez's hands behind his back, which caused Mr. Ramirez pain due to a pre-existing injury, and that Officer Mendez did not release or adjust his grip when alerted to Mr. Ramirez's pain. Dkt. No. 6 ¶¶ 29, 92. But Mr. Ramirez elsewhere alleges that defendants "failed to assist Plaintiff or intervene and ask *Defendant SILVA* to loosen his grip or check on Plaintiff's health." Dkt. No. 6 ¶¶ 29, 92 (emphasis added). These potentially inconsistent allegations do not give each defendant fair notice of the basis for the claim asserted against him.

Accordingly, the Court concludes that Mr. Ramirez fails to state a claim against the individual defendants for violation of his Fourth Amendment right to be protected from the use of excessive force.

### 4. Claim 11: *Monell* Claim Against the City of San Jose

Mr. Ramirez alleges violations of his Fourth and Fourteenth Amendment rights based on unconstitutional policies, practices, or customs of the City of San Jose. Specifically, Mr. Ramirez alleges that the City had an "official recognized custom, policy, and practice" of: (i) employing officers known for abusing their authority and failing to follow police department policies; (ii) inadequately supervising and disciplining City police officers; (iii) failing to adequately train officers and to institute appropriate polices regarding the use of excessive force and unreasonable searches and seizures; (iv) using excessive force, racial profiling, and "targeting citizens of Latinx descent"; (v) failing to adequately discipline City police officers for such misconduct; (vi) failing to otherwise address "discrimin[ation] [by police officers] against citizens of Latinx descent." Dkt. No. 6 ¶ 100. Mr. Ramirez also alleges that the City and "various other officials" "ratified such policies." *Id.* ¶ 102.

A government entity may not be held liable for constitutional violations under 42 U.S.C. § 1983 unless the plaintiff establishes (1) that the plaintiff possessed a constitutional right of

which he was deprived; (2) that the municipality had a policy, practice, or custom; (3) that this policy, practice, or custom amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, practice, or custom is the moving force behind the constitutional violation. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citation omitted). "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty*, 654 F.3d at 900.

In support of his *Monell* claim, Mr. Ramirez cites a list of legal actions filed by others against the City of San Jose, which include allegations that San Jose police officers used excessive force during arrests or investigatory stops; engaged in racial profiling; or participated in a pattern and practice of discrimination based on race, religion, and national origin. *Id.* ¶ 104. In addition, Mr. Ramirez asserts that data from a study done by the San Jose Police Department demonstrate that those most likely to suffer from use of force when charged with obstructing justice are Latino men under the age of 39. *Id.* ¶ 105. He points to data from two other studies that show that "officers were more likely to take white suspects to the hospital and their minority counterparts to jail in use-of-force cases when no charges are filed" and that "San Jose police officers were 2.4 times more likely to handcuff Latino residents than white people during a traffic stop." *Id.* He also quotes recent statements from police auditors and a retired judge observing that "whites had safer interactions with police than minorities, including Latinx citizens" and that the San Jose police department's "recent scandals point to a larger problem of systemic racism." *Id.* He alleges, drawing from published news sources, that Latinos are pulled over, searched, or otherwise detained at far higher percentages than their share of the City's population, even when those stops "seldom led to arrests or evidence of crimes" (in the first nine months of 2014, "Latinos made up 57% of the traffic stops" despite "being 33% of the population"), and that San Jose police are more likely to use force against Black and Latino citizens than against criminal suspects from other ethnic groups. *Id.*

Because Mr. Ramirez has not yet stated a claim for deprivation of a constitutional right, as

10

1  discussed above, he also fails to state a *Monell* claim against the City.  In addition, for the reasons
2  discussed above, the FAC does not plausibly allege that an unconstitutional policy, practice or
3  custom motivated the conduct of any of the individual defendants.  However, the Court does not
4  agree with the City's assertion that Mr. Ramirez's *Monell* claim contains mere formulaic
5  recitations of the existence of unlawful policies, practices, or customs.  While the admissibility of
6  the evidence underlying Mr. Ramirez's allegations may be subject to debate, the FAC's
7  allegations cannot be described as merely conclusory.  This distinguishes his claim from the cases
8  on which the City relies.  For example, in *Arteaga v. City of Oakley*, No. 19-cv-05725-JCS, 2020
9  WL 511876, at *6 (N.D. Cal. Jan. 31, 2020), the plaintiff did not allege any other similar incidents
10 that would tend to support an inference that unconstitutional policies were well settled.  And in
11 *Lozano v. Cty. of Santa Clara*, No. 19-CV-02634-EMC, 2019 WL 6841215, at *18 (N.D. Cal.
12 Dec. 16, 2019), the court plaintiff's *Monell* claim because the plaintiff had not alleged that any
13 other person was subjected to similar treatment.

14 Because Mr. Ramirez has not alleged a deprivation of a constitutional right or an
15 unconstitutional policy, practice or custom that motivated the conduct of any of the individual
16 defendants, he fails to state a *Monell* claim against the City.

### 5.     Claim 4:  Title VI Claim Against the City

18 Mr. Ramirez asserts a claim against the City of San Jose for intentional race discrimination
19 under Title VI of the Civil Rights Act of 1962, 42 U.S.C. § 2000d *et seq*.  Dkt. No. 6 ¶¶ 59–62.
20 Specifically, he alleges that the City of San Jose "intentionally discriminates against Latinx males,
21 including Plaintiff, through its policing methods and practices."  *Id.* ¶ 60.

22 A Title VI discrimination claim requires a plaintiff to demonstrate that he was "subjected
23 to discrimination" due to "race, color, or national origin," by a "program or activity receiving
24 financial assistance."  *Yu v. Idaho State University*, 15 F.4th 1236, 1242 (9th Cir. 2021) (citing 42
25 U.S.C. § 2000d).  "Private parties seeking judicial enforcement of Title VI's nondiscrimination
26 protections must prove intentional discrimination."  *Id.* (citing *Alexander v. Sandoval*, 532 U.S.
27 275, 280–81 (2001)).

28 Here, for the same reasons that the Court concluded that Mr. Ramirez had not stated an

11

equal protection claim, the Court concludes that Mr. Ramirez has not pled facts that plausibly support a claim that the City intentionally discriminated against him because of his race or perceived national origin. *See Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) ("Title VI . . . proscribes only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment") (quoting *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978)). Mr. Ramirez's allegations of discrimination by the City with respect to the traffic stop and subsequent detention are ambiguous and conclusory.

Accordingly, the Court concludes that Mr. Ramirez fails to state a claim against the City for intentional discrimination under Title VI.

### 6. Claim 2: Denial of Equal Benefits under 42 U.S.C. § 1981

Mr. Ramirez asserts a claim against all defendants for violations of 42 U.S.C. § 1981. Dkt. No. 6 ¶¶ 48–51. Specifically, he claims that defendants denied him his right "to be subject to like punishment" and his right "to full and equal benefit of all laws and proceedings for the security of his person as enjoyed by white citizens." *Id.* ¶¶ 49, 51.

Section 1981(a) provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Defendant argues that § 1981 is limited to a specific function: to protect the equal right of "all persons … to make and enforce contracts" without respect to race. Dkt. No. 12 at 19 (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006)). But this argument ignores the statutory text, which protects not only the right to make and enforce contracts, but also several other important rights. *See* 42 U.S.C. § 1981(a). A careful reading of *Domino's Pizza* supports the conclusion that a § 1981 claim does not require a contractual relationship; rather, where a contract is the basis of a § 1981 claim, the plaintiff must have rights to assert under the contract. *Mazloum v. Dist. of Columbia Metropolitan Police Dept.*, 522 F. Supp. 2d 24, 37–38 (D.D.C. 2007); *see also Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989) (holding that plaintiffs

stated a discriminatory wrongful arrest claim under § 1981's equal-benefit clause where no contractual relationship existed between the parties). "A claim involving the deprivation of the equal benefit of the laws need not rely on a contractual obligation to create any rights." *Mazloum*, 522 F. Supp. 2d at 39.

Here, it is undisputed that Mr. Ramirez was not subjected to any punishment; after being stopped, he was permitted to leave without even a citation and was not charged with any offense. For this reason, he cannot state a claim under § 1981 for violation of his right to be subjected to "like punishment" regardless of race or national origin. By contrast, the use of excessive force or an unlawful detention may support an equal-benefit claim based on "laws or proceedings for the security of persons," if Mr. Ramirez adequately pleads the other requirements of such a claim. *See Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003) (finding "no difficulty categorizing either a criminal investigation or the restoration of the peace" as a "proceeding for the security of persons and property"). However, for the reasons discussed above, Mr. Ramirez has not pled facts plausibly showing that he was stopped or detained by any defendant because of his race or perceived national origin. Accordingly, the Court dismisses his § 1981 claim for failure to state a claim, with leave to amend as to "laws or proceedings for the security of persons" but without leave to amend as to "like punishment."

### B. State Law Claims

#### 1. Claim 3: California Government Code §§ 11135 and 11139

Mr. Ramirez asserts a claim against the City for violation of California Government Code §§ 11135 and 11139, which together prohibit discrimination on the basis of race and other protected classes, by any program conducted by the state or that receives financial assistance from the state. Dkt. No. 6 ¶¶ 53–58. For the same reasons that the Court concludes Mr. Ramirez has not stated a claim for intentional discrimination on the basis of race under Title VI or for violation of the equal protection clause, the Court also concludes that Mr. Ramirez has not adequately alleged that he was discriminated against because of his race, and therefore fails to state a claim for violation of California Government Code §§ 11135 and 11139.

### 2. Claims 5 and 6: Article I, §§ 7(a) and 13 of the California Constitution

Mr. Ramirez asserts a claim against all defendants for violation of Article I, § 7(a) and § 13 of the California Constitution. Dkt. No. 6 ¶¶ 63–72. Article I, section 7 provides that "[a] person may not be deprived of life, liberty, or property without due process of law." Cal. Const. art. 1, § 7, subd. (a). Article I, section 13 guarantees the right to be free from unreasonable searches and seizures. Cal. Const. art. 1, § 13.

With respect to Mr. Ramirez's § 7(a) claim, the only allegation he makes is that "[d]efendants' above-described conduct violated Plaintiff's right not to be deprived of due process and equal protection of the laws." *See* Dkt. No. 6 ¶ 64. Because the nature of the alleged deprivation by each defendant is not clearly alleged in the FAC, Mr. Ramirez fails to state a claim for violation of § 7(a).

With respect to Mr. Ramirez's § 13 claim, the Court concludes that for the same reasons that Mr. Ramirez has not adequately alleged an unreasonable search or seizure pursuant to the Fourth Amendment, he does not state a claim against any defendant for violation of § 13.

### 3. Claim 7: Bane Act

Mr. Ramirez asserts a claim for violation of the Bane Act, California Civil Code § 52.1, against defendant Officers Mendez, Packer, and Silva. The Bane Act "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation, or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Venegas v. Cty. of Los Angeles*, 153 Cal. App. 4th 1230 (2007)). Actionable threats, intimidation, and coercion need not be "independent from the constitutional violation alleged." *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017) (citation and internal quotation marks omitted). Rather, the phrase "threat, intimidation or coercion" is as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious." *Id.* "Where . . . an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* at 801. The officers must have "intended not only the force, but its

14

1  unreasonableness." *Reese*, 888 F.3d at 1045.

2  As discussed above, Mr. Ramirez has not stated a claim for violation of federal or state

3  law. In addition, he has not pled any facts that would plausibly support his contention that any

4  individual defendant engaged in threats, intimidation, or coercion, or otherwise acted with specific

5  intent to violate his rights. Accordingly, the Court concludes that Mr. Ramirez fails to state a

6  claim for violation of the Bane Act.

### 4. Claim 13: Ralph Act

Mr. Ramirez alleges a claim against all defendants for violation of the Ralph Act, California Civil Code § 51.7. Dkt. No. 6 ¶¶ 114–17. The Ralph Act guarantees people in California "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any [listed] characteristic." Cal. Civ. Code § 51.7(a). To state a Ralph Act claim, Mr. Ramirez must allege that defendants (1) committed or threatened a violent act against him; (2) were motivated by their perception of his political affiliation or other protected characteristic; (3) that he was harmed; and (4) that defendants' conduct was a substantial factor in causing him harm. *Campbell v. Feld Entertainment, Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014) (citing *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007)).

Here, Mr. Ramirez does not plead that any defendant committed or threatened an act of violence against him. "The plain meaning of the word 'violence,' however, clearly involves some physical, destructive act." *Campbell*, 75 F. Supp. 3d at 1205–8 (citation omitted) (finding no triable issue of fact as to whether defendants committed or threatened violence where one plaintiff alleged that some kind of light was shone into her eyes, and another plaintiff alleged that defendants pulled a rope barrier against his body and threw ice and sticks at plaintiff's camera). "Violence" "demands more than mere application of physical force." *Id.* More importantly, for the reasons discussed above, Mr. Ramirez has not adequately alleged that the conduct of any defendant was motivated by that defendant's perception of Mr. Ramirez's protected characteristics has not pled facts plausibly showing that any defendant was motivated by racial animus or animus based on perceived national origin. *See Austin B.*, 149 Cal. App. 4th at 880 (affirming trial court's

15

1  grant of nonsuit on plaintiff's Ralph Act claim against defendant where court assumed that
2  plaintiffs had proven that defendant "grabbed, yanked, compressed, stepped on" and "slammed
3  down" plaintiffs, "using pain to get compliance," where no evidence showed that defendant's
4  alleged actions were based on bias or animus).

Accordingly, the Court concludes that Mr. Ramirez fails to state a claim for violation of the Ralph Act.

### 5. Claim 8: Battery

Mr. Ramirez asserts a claim for battery against defendant officers Mendez and Packer, as well as the City of San Jose. Dkt. No. 6 ¶¶ 79–81. To state a claim of battery under California law, "a plaintiff must demonstrate that: (1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching." *Campbell*, 75 F. Supp. 3d. at 1217. Although "the least touching" may constitute battery, and the force used need not cause bodily harm or even pain, *People v. Mansfield*, 200 Cal. App. 3d 82, 88 (1988), Mr. Ramirez has not plausibly alleged that any individual defendant touched Mr. Ramirez with the intent to harm or offend him. Accordingly, the Court concludes that Mr. Ramirez fails to state a claim for battery against the individual defendants. Because Mr. Ramirez's battery claim against the individual defendants fails, his attempt to hold the City vicariously liable for the conduct of an individual defendant also fails.

### 6. Claim 12: Intentional Infliction of Emotional Distress

Mr. Ramirez asserts a claim for intentional infliction of emotional distress against all defendants. Dkt. No. 6 ¶¶ 110–13. Such a claim requires "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citation and internal quotation marks omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually

16

1  tolerated in a civilized community." *Id.*

2  Here, Mr. Ramirez has alleged that he was "unlawfully detained without probable cause,
3  was surrounded by aggressive officers, was ordered out of his vehicle in public and forced to
4  submit to an arbitrarily prolonged detention, was interrogated about his clothing, drugs, weapons,
5  and gang affiliations based on his race and perceived national origin." Dkt. No. 6 ¶ 112. He "was
6  also subjected to excessive force when his pre-existing injury was aggravated." *Id.* Although Mr.
7  Ramirez alleges that such conduct was intentional, he has not adequately alleged that such conduct
8  was intended to cause emotional distress. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th
9  965, 1001 (1993) (claim for intentional infliction of emotional distress requires a showing of
10 defendant's intent to cause, or reckless disregard of the probability of causing, emotional distress);
11 *see also Gonzales v. City of San Jose*, No. 19-CV-08195, 2020 WL 3186282, at *7 (N.D. Cal. Jun.
12 15, 2020) (dismissing IIED claim against police officers where allegation that the police officer
13 had "the specific intent to inflict severe mental and emotional distress" was a mere "legal
14 conclusion"). In addition, Mr. Ramirez has not plausibly alleged severe or extreme emotional
15 distress. Given the nature of Mr. Ramirez's existing factual allegations about the stop and his
16 subsequent interactions with the individual defendants, the Court is skeptical that any plausible
17 claim of intentional infliction of emotional distress can be asserted here. Because Mr. Ramirez's
18 intentional infliction of emotional distress claim against the individual defendants fails, his attempt
19 to hold the City vicariously liable also fails.

20 Accordingly, the Court concludes that Mr. Ramirez fails to state a claim for intentional
21 infliction of emotional distress.

## IV.    LEAVE TO AMEND

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012) (citation omitted). Here, Mr. Ramirez has requested leave to amend, *see* Dkt. No. 16 at 8, 18, 20, and at the January 25, 2022 hearing, Mr. Ramirez represented that he could allege additional facts in support of at least his third claim for relief, if given the opportunity to amend. Because it does not appear that

amendment would be futile, the Court will permit Mr. Ramirez to amend his complaint, consistent with the foregoing discussion.

## V.  CONCLUSION

The Court grants defendants' motion to dismiss the FAC, with leave to amend. The Court declines at this time to address whether defendants are entitled to qualified immunity as to any claim, given the unclear nature of Mr. Ramirez's claims and allegations and the difficulty the Court now has identifying the precise factual basis for these claims. *See Pearson*, 555 U.S. at 238–239. Mr. Ramirez may file an amended complaint by **April 14, 2022** that addresses the deficiencies above.

**IT IS SO ORDERED.**

Dated: March 24, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge