1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6                                  SAN JOSE DIVISION

7

8    NICHOLAS RAMIREZ,                          Case No.  21-cv-08127-VKD

9              Plaintiff,

                                                **ORDER GRANTING IN PART AND**
10        v.                                    **DENYING IN PART DEFENDANTS'**
                                                **SECOND MOTION TO DISMISS**
11   CITY OF SAN JOSE, et al.,
                                                Re: Dkt. No. 29
12             Defendants.

13

14         Plaintiff Nicholas Ramirez sues the City of San Jose and several San Jose Police

15   Department ("SJPD") Officers for alleged violations of his federal constitutional and statutory

16   rights.  After the Court dismissed his first amended complaint (Dkt. No. 26), Mr. Ramirez filed a

17   second amended complaint asserting claims against only defendant Officer Mendez and the City

18   of San Jose (Dkt. No. 28).  Mr. Ramirez also asserts several state law claims.  Defendants move to

19   dismiss all but one of Mr. Ramirez's claims in the second amended complaint for failure to state a

20   claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Officer Mendez also

21   argues that he is entitled to qualified immunity with respect to the claims against him.  Having

22   considered the parties' moving papers and arguments made at the hearing on June 14, 2022, the

23   Court grants in part and denies in part the defendants' motion.

24   **I.     BACKGROUND**

25         For purposes of this motion, the Court accepts as true the following factual allegations,

26   which are taken from Mr. Ramirez's second amended complaint ("SAC").

27         On May 27, 2021, Mr. Ramirez was driving in East San Jose when he was stopped by

28   defendant Officer Mendez. Dkt. No. 28 ¶¶ 1–3.  Officer Mendez called for backup, and two other

United States District Court
Northern District of California

officers arrived on the scene. *Id.* ¶ 4. Officer Mendez opened the driver's side door of Mr. Ramirez's car and asked him to exit the vehicle, which he did. *Id.* ¶ 5. Officer Mendez performed a pat search of Mr. Ramirez and asked him questions regarding drugs, weapons, his criminal history, and whether he was affiliated with a gang. *Id.* ¶¶ 9–10, 12. Officer Mendez also attempted to take photos of Mr. Ramirez's tattoos. *Id.* ¶ 12.

During the search, Officer Mendez "forced [Mr. Ramirez's] hands behind his back," which Mr. Ramirez says caused him significant pain and aggravated a pre-existing injury. *Id.* ¶ 9. Mr. Ramirez informed Officer Mendez that he was in pain, but Officer Mendez did not ask how he could reduce the pain or otherwise show concern for Mr. Mendez's condition. *Id.* ¶¶ 17–18. When Mr. Ramirez asked Officer Mendez why he had been stopped, Officer Mendez responded that he had seen Mr. Ramirez looking down and assumed that Mr. Ramirez was using his cellphone while driving. *Id.* ¶ 6.

Mr. Ramirez accused Officer Mendez of racially profiling him and asked to speak to his supervisor. *Id.* ¶ 13. In response Officer Mendez stated, "I guess you're not going to tell me whether you run with anybody?" *Id.* ¶ 14. When Lt. Miri, the supervising officer, arrived on the scene, Mr. Ramirez indicated he wished to make a complaint about how he had been treated. *Id.* ¶ 44. Lt. Miri and the other officers provided their badge numbers to Mr. Ramirez. *Id.* Mr. Ramirez says that Lt. Miri asked if Mr. Ramirez was an Atlanta Braves fan (apparently referring to Mr. Ramirez's clothing) and remarked that "the area he was stopped in has a lot of Norteñeos [*sic*] in it,"[1] which Mr. Ramirez understood as Lt. Miri's effort to justify Officer Mendez's stop. *Id.* ¶¶ 46–47. Officer Packer, another officer on the scene, explained these actions and questions as "that's just questions we ask, there's a lot going on right now" and "it's just questions we ask man, it's just to like document who we come in contact with." *Id.* ¶ 16. The officers then released Mr. Ramirez and did not cite him for any violations. *Id.* ¶ 49.

In the SAC, Mr. Ramirez asserts the following claims:

- violation of his Fourteenth Amendment right to equal protection against Officer

---

[1] According to the SAC, Norteños is a gang "of Latinx origin." Dkt. No. 28 ¶ 47.

Mendez, 42 U.S.C. § 1983.  *Id.* ¶¶ 77–81.

- violations of his Fourth Amendment rights against Officer Mendez for unlawful search and detention and for use of excessive force, 42 U.S.C. § 1983.  *Id.* ¶¶ 110–123.

- violation of his Fourth and Fourteenth Amendment rights against the City, 42 U.S.C. § 1983. *Id.* ¶¶ 124–143.

- discrimination based on race and national origin against the City and Officer Mendez, 42 U.S.C. § 1981.  *Id.* ¶¶ 82–87.

- five state law claims for violations of Sections 7 and 13 of Article I of the California Constitution, the Bane Act, and the Ralph Act, as well as for battery and intentional infliction of emotional distress.

Defendants indicate that they will answer Mr. Ramirez's Fourth Amendment unlawful detention claim (claim 7), but they move to dismiss all other claims for failure to state a claim. They also argue that Officer Mendez is entitled to qualified immunity.  Dkt. No. 29.

## II.    LEGAL STANDARD

### A.    Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.  *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant.  *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

United States District Court
Northern District of California

1    pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a

2    right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

3    (citations omitted). However, only plausible claims for relief will survive a motion to dismiss.

4    *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a

5    reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does

6    not have to provide detailed facts, but the pleading must include "more than an unadorned, the-

7    defendant-unlawfully-harmed-me accusation." *Id.* at 678.

8        **B.    Qualified Immunity**

9        The doctrine of qualified immunity shields officials from civil liability so long as their

10    conduct "does not violate clearly established statutory or constitutional rights of which a

11    reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Pearson*

12    *v. Callahan*, 555 U.S. 223, 231 (2009)). The court must consider two issues: whether the facts

13    that a plaintiff has alleged describe a violation of a constitutional right, and whether the right at

14    issue was "clearly established" at the time of the alleged misconduct. *Pearson,* 555 U.S. at 232.

15    A court has discretion to decide the order in which it will decide each issue. *Id.* at 236.

16        However, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual

17    basis for the plaintiff's claim or claims may be hard to identify." *Id.* at 238–239. The Ninth

18    Circuit has suggested that "while government officials have the right . . . to raise and immediately

19    appeal the qualified immunity defense on a motion to dismiss, the exercise of that authority is not

20    a wise choice in every case," particularly in circumstances where "the courts may be called upon

21    to decide far-reaching constitutional questions on a nonexistent factual record." *Wong v. U.S.*, 373

22    F.3d 952, 957 (9th Cir. 2004).

23    **III.    DISCUSSION**

24        The Court first considers defendants' Rule 12(b)(6) challenge to Mr. Ramirez's federal

25    claims, and then considers their challenge to his state claims. Finally, the Court considers whether

26    Officer Mendez is entitled to qualified immunity as to any of Mr. Ramirez's claims.

27

28

4

A.      **Federal Claims**

1.      **Claim 1: Fourteenth Amendment (Equal Protection)**

Mr. Ramirez claims that Officer Mendez violated his Fourteenth Amendment right to equal protection. Dkt. No. 28 ¶¶ 77–81. He says that he was stopped because he is "a young Latinx male driving in the East Side of San Jose," as part of a "continuing pattern and practice of intentional race discrimination against Latinx citizens in pedestrian and traffic stops and subsequent investigations carried out throughout the city and heavily concentrated in the East Side of San Jose." *Id.* ¶ 78. He denies looking down at his phone before being stopped. *Id.* ¶ 8. As alleged evidence of a "continuing pattern and practice," he points to at least one study indicating that an individual's race correlates with the likelihood they may be subject to a traffic stop by the SJPD. *Id.* ¶¶ 57. Mr. Ramirez claims that he was "treated differently than other groups based on his race and perceived national origin." *Id.* ¶ 78.

To state a claim for violation of the equal protection clause of the Fourteenth Amendment, a plaintiff must plead facts that plausibly show that a defendant's conduct had a discriminatory effect and was motivated by a discriminatory purpose. *Rosenbaum v. City and Cnty. of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). Here, to allege a discriminatory effect, Mr. Ramirez must plead facts showing that Latinx men (or however he chooses to define the protected class) were subjected to the conduct of which he complains while "similarly situated individuals" not in the protected class were not subjected to that conduct. *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). To allege discriminatory purpose, Mr. Ramirez must plead facts showing that defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (quoting *Wayte*, 470 U.S. at 610); *see also Iqbal*, 556 U.S. at 676–77 (purposeful discrimination involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group).

In its prior order, the Court identified three reasons why Mr. Ramirez's earlier complaint failed to state an equal protection claim. Dkt. No. 26 at 5–6. First, Mr. Ramirez failed to identify against whom his equal protection claim was brought and what conduct formed the basis for his

United States District Court
Northern District of California

1    claim. *Id.* at 5.  Second, Mr. Ramirez failed to plead any facts regarding a "pattern or practice" of

2    discriminatory conduct in support of his claim.  *Id.* at 5–6.  Third, he failed to allege any facts

3    showing that he was stopped or detained "because of" his race and perceived national origin.  *Id.*

4    at 6.

5           Mr. Ramirez has remedied each of these problems.  In his SAC, Mr. Ramirez specifies that

6    his equal protection claim is brought against Officer Mendez.  Dkt. No. 28 at 13.  The conduct

7    forming the basis of this claim is Officer Mendez's alleged stop of Mr. Ramirez solely because of

8    his race or perceived national origin, as part of a policy of selective enforcement of the traffic laws

9    against Mr. Ramirez and other Latinx individuals in San Jose.  *Id.* ¶ 79.  By clarifying the nature

10   of the claim and specifying against whom the claim is brought, Mr. Ramirez has given Officer

11   Mendez fair notice of the conduct he believes constitutes an equal protection violation.

12          Mr. Ramirez also pleads facts supporting the existence of a "pattern or practice" of

13   discriminatory conduct.  He identifies general statistics that "Latinx citizens made up 57% of the

14   traffic stops" while they comprised only "33% of the population," and cites a "gang suppression"

15   policy that allegedly targets Latinx residents.  Dkt. No. 28 ¶¶ 57, 59, 132, 135.  In addition, he

16   alleges that the SJPD treated him differently based on his race and perceived national origin, as

17   evidenced by the officers' questions and remarks about his clothing, appearance, possible gang

18   affiliation, and the location where he was driving.  *See id.* ¶¶ 12–14, 16, 20.  Construed in the light

19   most favorable to the plaintiff, these allegations could support a reasonable inference that the

20   SJPD has a practice of treating Latinx people, like Mr. Ramirez, differently from others who are

21   not Latinx.  *See Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013) (accepting

22   statistical analysis as evidence of racial profiling); *but see Chavez v. Illinois State Police*, 251 F.3d

23   612, 647–648 (7th Cir. 2001) (denying summary judgment to plaintiffs who relied on only

24   statistics to show Illinois State Police were engaging in racial profiling).

25          As Mr. Ramirez now expressly denies looking down at his lap or down at a cellphone

26   while driving, the allegations of the SAC also support the inference that Mr. Ramirez was stopped

27   or detained "because of" his race or perceived national origin, in conformity with a discriminatory

28   pattern or practice, and not merely in spite of those characteristics.  *See Rosenbaum,* 484 F.3d at

United States District Court
Northern District of California

6

1152 (noting that racial animus must at least "in part" motivate a particular course of action); *Talib v. Nicholas*, No. CV 14-5871-JAK (DFM), 2015 WL 9598821, at *6 (C.D. Cal. Dec. 4, 2015) ("[A]llegations that there could have been no other basis for a motorist to be pulled over other than racial profiling can be sufficient to permit an inference that the motorist's Fourteenth Amendment rights were violated."); *Waters v. Howard Sommers Towing, Inc.*, No. 10–5296-CAS (AJWx), 2011 WL 2601835, at *6 (C.D. Cal. June 30, 2011) (denying motion to dismiss equal protection claim where officer claimed broken taillight was basis for traffic stop but plaintiff alleged that taillight was not broken and there was no reason other than racial profiling to justify stop).

Officer Mendez cites *Davis v. City of Seattle* as an example of a case in which an equal protection claim similar to Mr. Ramirez's was rejected for failure to show discriminatory purpose. *See* Dkt. No. 29. at 5 (citing *Davis v. City of Seattle*, No. C13-0895, 2014 WL 3810574, at 9 (W.D. Wash. 2014)). But *Davis* is inapposite. First, the equal protection claim in that case was rejected on summary judgment, not at the pleading stage. *Davis*, 2014 WL 3810574, at *1. Second, in *Davis* no references to the plaintiff's race or race-related characteristics appear to have been made. *Id.* at *9. By contrast, Mr. Ramirez alleges that the officers on the scene, including Officer Ramirez, made references to the location where Mr. Ramirez was stopped and his potential affiliation with a Latinx gang. Third, the plaintiff in *Davis* provided no evidence of dissimilar treatment. *Id.* at *10. Here, Mr. Ramirez points to at least one study indicating that an individual's race correlates with the likelihood that they will be subject to a traffic stop by the SJPD, as well as a "gang suppression" policy that allegedly targets Latinx residents, suggesting a practice of different treatment based on race or national origin may exist.

Officer Mendez also argues that Mr. Ramirez has not alleged facts plausibly showing that Officer Mendez "could have determined Plaintiff's ethnicity before stopping him" and that this is "reason alone to discount his assertion of discriminatory motive." However, accepting this argument would require the Court to resolve facts that may be in dispute. If Officer Mendez stopped Mr. Ramirez because he observed Mr. Ramirez looking down at his lap while driving, Officer Mendez may also have observed Mr. Ramirez's appearance for purposes of forming an impression of his race or perceived national origin. *See, e.g.,* Dkt. No. 28 ¶ 6, 39, 149 (stop made

1  during daylight hours).  The reason for the stop and what Officer Mendez observed are disputed

2  questions of fact that cannot be resolved at the pleading stage.

3          For the reasons discussed above, Mr. Ramirez pleads facts that could support an inference

4  that Officer Mendez stopped him because of his race or perceived national origin in violation of

5  Mr. Ramirez's Fourteenth Amendment right of equal protection.  *Whren v. United States*, 517 U.S.

6  806, 813 (1996);  ("[T]he Constitution prohibits selective enforcement of the law based on

7  considerations such as race."); *James v. Seattle*, 2011 WL 6150567, *13 (W.D. Wash. 2011)

8  ("Racial profiling can constitute a deprivation of a citizen's right to equal protection under the

9  law."); *Floyd*, 959 F. Supp. 2d at 667 (S.D.N.Y. 2013) ("The Equal Protection Clause's

10  prohibition on selective enforcement means that suspicious blacks and Hispanics may not be

11  treated differently by the police than equally suspicious whites.").

12          Accordingly, the Court denies defendants' motion to dismiss Mr. Ramirez's first claim for

13  relief.

14                  **2.      Claim 8: Fourth Amendment (Excessive Force)**

15          Mr. Ramirez also alleges a violation of his Fourth Amendment right to be free from the use

16  of excessive force.  Dkt. No. 28 ¶¶ 117–123.  In the SAC, Mr. Ramirez alleges that Officer

17  Mendez "used excessive force while forcing Plaintiff's hands behind his back and aggravating his

18  pre-existing injury" and "chose to ignore Plaintiff's plea not to hurt him or provide reasonable

19  accommodations."  *Id.* ¶ 120.

20          The Supreme Court has recognized that "the right to make an investigatory stop

21  necessarily carries with it the right to use some degree of physical coercion or threat thereof to

22  effect it."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  "Not every push or shove, even if it may

23  later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Id.*

24  (citation omitted).  Whether an officer has used excessive force requires the court to balance "the

25  nature and quality of the intrusion of the individual's Fourth Amendment interests against the

26  countervailing governmental interest at stake."  *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir.

27  2010) (quoting *Graham*, 490 U.S. at 396).  The court must examine "the facts and circumstances

28  of each particular case, including the severity of the crime at issue, whether the suspect poses an

United States District Court
Northern District of California

8

1    immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

2    or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).  The

3    "reasonableness of a particular use of force must be judged from the perspective of a reasonable

4    officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490

5    U.S. at 396).  "A significant injury is not a threshold requirement for stating an excessive force

6    claim," and "even tight handcuffing can constitute excessive force." *Gillespie v. Torres*, No. 20-

7    cv-03735-DMR, 2020 WL 6710090, at *3 (N.D. Cal. Nov. 16, 2020) (citing *LaLonde v. Cnty. of*

8    *Riverside*, 204 F.3d 947, 960 (9th Cir. 2000)).

9            In its prior order, the Court found that Mr. Ramirez failed to state an excessive force claim

10   because the FAC did not "clearly identify which defendants used what force against Mr.

11   Ramirez." *See* Dkt. No. 26 at 9.  In the SAC, Mr. Ramirez alleges only that Officer Mendez

12   "forc[ed] [his] hands behind his back," and this action caused him "physical pain and emotional

13   distress" due to a pre-existing injury that is not described. *Id.* ¶¶ 119, 120.  At the hearing on

14   defendants' motion, Mr. Ramirez's counsel represented that Officer Mendez held Mr. Ramirez's

15   hands behind his back for approximately 4–7 seconds.  Audio recording at 10:26 a.m. (June 14,

16   2022).  Defendants characterize this use of force as *de minimis* and objectively reasonable as a

17   matter of law.  Dkt. No. 29 at 8.

18           The Court agrees with defendants.  The level of force Officer Mendez applied, as alleged

19   in the SAC, was minimal and objectively reasonable in these circumstances.  *Graham*, 490 U.S. at

20   396; *see also Tuttelman v. City of San Jose*, 420 F. App'x 758, 763 (9th Cir. 2011) (holding that

21   officer's grabbing of suspect's wrist as part of a pat-down search did not constitute excessive

22   force).  Mr. Ramirez does not dispute that it was objectively reasonable for Office Mendez to

23   place Mr. Ramirez's hands behind his back as an initial matter after Mr. Ramirez got out of his

24   car.  Even assuming Mr. Ramirez had a pre-existing injury which caused him to experience more

25   pain than a person without such an injury would experience, Mr. Ramirez concedes that the

26   application of force lasted only 4–7 seconds before Officer Mendez completely released Mr.

27   Ramirez from his grasp.  These facts do not support a plausible claim that Mr. Ramirez's suffered

28   a violation of his constitutional right to be free from excessive force.

United States District Court
Northern District of California

1    Accordingly, the Court dismisses Mr. Ramirez's eighth claim for relief.

2       **3.      Claim 9: *Monell* Claim Against the City of San Jose**

3    In the SAC, Mr. Ramirez alleges that the City has policies, practices, or customs that

4    resulted in violations of his Fourth and Fourteenth Amendment rights.  Specifically, Mr. Ramirez

5    alleges, as he did in the FAC, that the City had an "official recognized custom, policy, and

6    practice" of: (i) employing officers known for abusing their authority and failing to follow police

7    department policies; (ii) inadequately supervising and disciplining City police officers; (iii) failing

8    to adequately train officers and to institute appropriate policies regarding the use of excessive

9    force and unreasonable searches and seizures; (iv) using excessive force, racial profiling, and

10   "targeting citizens of Latinx descent"; (v) failing to adequately discipline City police officers for

11   such misconduct; (vi) failing to otherwise address "discrimin[ation] [by police officers] against

12   citizens of Latinx descent."  Dkt. No. 28 ¶ 128.  In the SAC, Mr. Ramirez adds new allegations

13   that the City's "gang suppression" policy specifically targets Latinx residents of East San Jose

14   with "significantly higher levels of traffic stops, pat-downs, searches, curb seating, gang relation

15   interrogations, photographing of Latinx bodies/faces to catalog them, handcuffing, and threats of

16   force," as compared to white residents.  *Id.* ¶¶ 132–136.   Mr. Ramirez also alleges that this policy

17   was "the force" or a "significantly influential force" behind the alleged constitutional violations.

18   *Id.* ¶¶ 132, 137.

19       The City may not be held liable for constitutional violations under 42 U.S.C. § 1983 unless

20   Mr. Ramirez establishes (1) that he possessed a constitutional right of which he was deprived; (2)

21   that the municipality had a policy, practice, or custom; (3) that this policy, practice, or custom

22   amounts to deliberate indifference to his constitutional rights; and (4) that the policy, practice, or

23   custom is the moving force behind the constitutional violation.  *Monell v. Dep't of Soc. Servs. of

24   the City of New York*, 436 U.S. 658, 694 (1978); *Dougherty v. City of Covina*, 654 F.3d 892, 900

25   (9th Cir. 2011).  "For purposes of liability under *Monell*, a policy is a deliberate choice to follow a

26   course of action … made from among various alternatives by the official or officials responsible

27   for establishing final policy with respect to the subject matter in question."  *Fogel v. Collins*, 531

28   F.3d 824, 834 (9th Cir. 2008) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per

United States District Court
Northern District of California

10

curiam) (internal quotations omitted)).

In its prior order, the Court identified two deficiencies with respect to Mr. Ramirez's *Monell* claim.  First, because Mr. Ramirez had not stated any claim for deprivation of a constitutional right, he also failed to state a *Monell* claim against the City.  Dkt. No. 26 at 10–11.  Second, Mr. Ramirez had not plausibly alleged that an unconstitutional policy, practice, or custom motivated the conduct of any of the individual defendants.  *Id.* at 11.

Defendants concede that Mr. Ramirez now adequately alleges a Fourth Amendment claim for unlawful detention.  Dkt. No. 29 at 4.  In addition, as discussed above, the Court concludes that Mr. Ramirez has stated a Fourteenth Amendment equal protection claim.  The allegations in the SAC describing the policies and practices of the SJPD with respect to "gang suppression," coupled with the remarks of individual officers suggesting the existence of a policy or practice that targets Latinx people in East San Jose for selective enforcement of the law based on race or perceived national origin, plausibly support Mr. Ramirez's claim that the City has a policy, custom, or practice of treating Latinx people differently that was the moving force behind Mr. Ramirez's alleged constitutional violations.  These allegations are sufficient to withstand a motion to dismiss at the pleading stage.

Accordingly, the Court denies defendants' motion to dismiss Mr. Ramirez's ninth claim for relief.

### 4.       Claim 2: Denial of Equal Benefits under 42 U.S.C. § 1981

In his SAC, Mr. Ramirez asserts a claim "Against all Defendants" under 42 U.S.C § 1981.  Dkt. No. 28 at 14.  However, he alleges facts that implicate only conduct by Officer Mendez and not the City.  Dkt. No. 28 ¶¶ 82–85.  The Court will thus treat this claim as if it were asserted against only Officer Mendez.

Section 1981(a) provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

In its prior order, the Court rejected defendants' contention that § 1981 applies only to claims based on the right to make and enforce contracts.  *See* Dkt. No. 26 at 12–13.  In their motion to dismiss the SAC, defendants do not repeat this contention.  Instead, they argue that "no court has ever held that a person is denied the 'benefit of . . . laws and proceedings for the security of persons and property' by virtue of an allegedly unlawful arrest," and that "such an interpretation of the words 'benefit' and 'laws and proceeding' would be not only novel but anomalous in light of their ordinary meaning."  Dkt. No. 29 at 24.  Defendants do not elaborate on this argument. Nor do they contend with the Second Circuit decision cited in the Court's prior order in which that court found "no difficulty categorizing either a criminal investigation or the restoration of the peace" as a "proceeding for the security of persons and property."  *See Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003).[2]

The Ninth Circuit recently affirmed a district court's conclusion that a plaintiff of Japanese descent stated a claim for relief under § 1981 where he alleged intentional discrimination in the enforcement of building codes, as evidenced by a building inspector's statements reflecting racial animus (i.e., comments about "haoles"—a Hawaiian word used as a derogatory term for "foreigner" or "outsider").  *Yoshikawa v. Seguirant*, — F.4th —, No. 21-15970, 2022 WL 2912474, at *5-6 (9th Cir. July 25, 2022).  Nothing in *Yoshikawa* suggests that Mr. Ramirez's claim should be dismissed as an "anomalous" application of § 1981.  As discussed above, Mr. Ramirez claims that Officer Mendez discriminated against him because of his race or perceived national origin by stopping and detaining him without justification because Mr. Ramirez was a Latinx male driving in East San Jose.  His allegation that this conduct deprived him of the full and equal benefit of the law in a proceeding involving the security of his person would appear to fall

---

[2] Defendants address *Phillip* only in their reply brief, where they dismiss the relevant portion of that decision as "dicta."  Dkt. No. 29 at 24.  This characterization is inaccurate.  The Second Circuit found that plaintiffs stated a claim for relief under § 1981 based on allegations that campus personnel and the Rochester Police Department arrested African-American students for "socializ[ing] in the lobby of the university library."  *Phillip*, 316 F.3d at 292.  The facts and circumstances of these arrests led the Second Circuit to "hold" that "plaintiffs here adequately alleged a deprivation of a law or proceeding for the security of persons and property."  *Id.* at 298.

United States District Court
Northern District of California

1    within the scope of the statute.  Defendants do not challenge Mr. Ramirez's § 1981 claim on any

2    other ground, except for qualified immunity, which the Court addresses separately below.

3            Accordingly, the Court denies defendants' motion to dismiss Mr. Ramirez's second claim

4    for relief.

5        **B.    State Claims**

6            **1.    Claims 3 and 4: Article I, §§ 7(a) and 13 of the California Constitution**

7            Mr. Ramirez asserts claims for injunctive relief against Officer Mendez and the City for

8    alleged violations of Article I, § 7(a) and § 13 of the California Constitution.  Dkt. No. 28 ¶¶ 88–

9    98.  As Mr. Ramirez acknowledges in his opposition to defendants' motion to dismiss, there is no

10   private right of action for damages caused by alleged violations of the California constitution.  *See*

11   Dkt. No. 34 at 21; *Wigfall v. City & Cnty. of San Francisco*, No. C 06-4968, 2007 WL 174434, at

12   *4 (N.D. Cal. Jan. 22, 2007) (no private right of action for damages claims based on the "equal

13   protection" and "unreasonable seizure" provisions of the California Constitution).  Moreover, any

14   claim for injunctive relief must, at minimum, allege a "real or immediate threat" that Mr. Ramirez

15   "will be wronged again."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  He cannot

16   merely speculate that in the future he will suffer harm.  *Id.*

17           Here, Mr. Ramirez alleges that "unless enjoined, Defendant Mendez will continue to

18   engage in the unlawful acts and the policies and practices [of the City]."  Dkt. No. 28 ¶ 98.  This

19   allegation relies on mere speculation; Mr. Ramirez alleges no facts that could plausibly support an

20   inference of a real or immediate threat.  Because Mr. Ramirez has not alleged any facts from

21   which the Court might infer that he will be harmed in the future by Officer Mendez, let alone any

22   other officer of the SJPD, Mr. Ramirez lacks standing to seek injunctive relief.  *See City of Los*

23   *Angeles*, 461 U.S. at 103.

24           Accordingly, the Court dismisses Mr. Ramirez's third and fourth claims for relief.

25           **2.    Claim 5: Bane Act**

26           Mr. Ramirez asserts a claim for violation of the Bane Act, California Civil Code § 52.1,

27   against Officer Mendez.  Dkt. No. 28 ¶¶ 99–105.  The Bane Act "civilly protects individuals from

28   conduct aimed at interfering with rights that are secured by federal or state law, where the

United States District Court
Northern District of California

interference is carried out 'by threats, intimidation, or coercion.'"  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230 (2007)).  Actionable threats, intimidation, and coercion need not be "independent from the constitutional violation alleged."  *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017) (citation and internal quotation marks omitted).  Rather, the phrase "'threat, intimidation or coercion' [is] an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious."  *Id.*  "[T]he egregiousness required by Section 52.1 is tested by whether the circumstances indicate the [officer] had a specific intent to violate the [plaintiff's] right to freedom from unreasonable seizure."  *Id.* at 801.  The "specific intent" inquiry focuses on two questions: (1) "[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case," and (2) "[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?"  *Id.* at 803.  If these two requirements are met, then "specific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right."  *Id.*  The first inquiry is a legal question, and the second inquiry is a question of fact for the jury.  *Id.*  In order to succeed on a claim under the Bane Act, a plaintiff must show that the constitutional deprivation was to a greater degree "than necessary under the circumstances."  *Reese*, 888 F.3d at 1045 (9th Cir. 2018).

In its prior order, the Court concluded that because Mr. Ramirez failed to state any claim of violation of state or federal law, his Bane Act claim also failed.  Mr. Ramirez's allegations in support of the Bane Act claim in his SAC are not substantively different than those in his FAC.  Because he has sufficiently plead that Officer Mendez unlawfully detained him, Mr. Ramirez has met the first element of a claim under the Bane Act.

Mr. Ramirez has not, however, alleged facts sufficient to support a reasonable inference that Officer Mendez acted with the requisite specific intent to unlawfully detain him.  In other cases where plaintiffs have successfully stated a Bane Act claim, the complaint includes facts showing that the defendant's conduct resulted from spite, *see Cornell*, 17 Cal. App. 5th at 803, or included falsification of evidence, *Watkins v. City of Oakland*, 2018 WL 574906, *13 (N.D. Cal.

United States District Court
Northern District of California

1   Jan. 26, 2018).  *See also Inman v. Anderson*, 294 F. Supp. 3d 907 (N.D. Cal. 2018) (describing

2   these cases and specific intent under the Bane Act).

3          Here, Mr. Ramirez alleges that Officer Mendez stopped him without justification,

4   approached his vehicle, and opened the passenger door without his consent.  Dkt. No. 28 ¶ 103.  In

5   a conclusory fashion he alleges that Officer Mendez took those actions "aggressively."  *Id.*  Mr.

6   Ramirez further alleges that once he left his vehicle, Officer Mendez held Mr. Ramirez's hands

7   behind his back while performing a pat search.  These allegations do not plausibly support an

8   inference that Officer Mendez acted with the specific intent to deprive Mr. Ramirez of a

9   constitutional right to a degree greater than necessary under the circumstances or engaged in any

10  other conduct that could be described as "egregious."

11         Accordingly, the Court dismisses Mr. Ramirez's seventh claim for relief.

12                    **3.    Claim 11: Ralph Act**

13         Mr. Ramirez asserts a claim for violation of the Ralph Act against Officer Mendez and the

14  City.  Dkt. No. 28 ¶¶ 152-157.  The Ralph Act guarantees people in California "the right to be free

15  from any violence, or intimidation by threat of violence, committed against their persons or

16  property because of political affiliation, or on account of any [listed] characteristic."  Cal. Civ.

17  Code § 51.7(a).  To state a Ralph Act claim, Mr. Ramirez must allege that defendants (1)

18  committed or threatened a violent act against him; (2) were motivated by their perception of his

19  political affiliation or other protected characteristic; (3) that he was harmed; and (4) that

20  defendants' conduct was a substantial factor in causing him harm.  *Campbell v. Feld*

21  *Entertainment, Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014) (citing *Austin B. v. Escondido*

22  *Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007)).

23         In its prior order, the Court dismissed Mr. Ramirez's Ralph Act claim, in part, because he

24  did not allege that any defendant committed or threatened an act of violence against him.  "The

25  plain meaning of the word 'violence,' . . . clearly involves some physical, destructive act."

26  *Campbell*, 75 F. Supp. 3d at 1205–8 (citation omitted) (finding no triable issue of fact as to

27  whether defendants committed or threatened violence where one plaintiff alleged that a light was

28  shone into her eyes, and another plaintiff alleged that defendants pulled a rope barrier against his

body and threw ice and sticks at plaintiff's camera). "Violence . . . demands more than mere application of physical force." *Id.*   The allegations of the SAC suffer from the same deficiency, and for this reason Mr. Ramirez fails to state a Ralph Act claim against either defendant.

Accordingly, the Court dismisses Mr. Ramirez's eleventh claim for relief.

### 4.   Claim 6: Battery

Mr. Ramirez asserts a claim for battery against Officer Mendez and, under a theory of vicarious liability, against the City.  Dkt. No. 28 ¶¶ 106-109.  His allegations in the SAC are the same as those in the FAC, except this claim is asserted only against Officer Mendez and the City.

To state a claim for battery under California law, "a plaintiff must demonstrate that: (1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching." *Campbell*, 75 F. Supp. 3d. at 1217.  As before, Mr. Ramirez does not plausibly allege that Officer Mendez touched him with the intent to harm or offend him. *See* Dkt. No. 26 at 16.  For this reason, the Court again concludes that Mr. Ramirez fails to state a claim for battery against Officer Mendez or the City.

Accordingly, the Court dismisses Mr. Ramirez's sixth claim for relief.

### 5.   Claim 10: Intentional Infliction of Emotional Distress

Mr. Ramirez asserts a claim for intentional infliction of emotional distress against Officer Mendez, and, under a theory of vicarious liability, against the City.  Dkt. No. 28 ¶¶ 144–151. Such a claim requires "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citation and internal quotation marks omitted).  A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

In its prior order dismissing Mr. Ramirez's claim for intentional infliction of emotional

distress for failure to state a claim, the Court expressed skepticism that, given the nature of his factual allegations, Mr. Ramirez could amend his complaint to plausibly state such a claim. *See* Dkt. No. 26 at 17. Mr. Ramirez's amended allegations include new characterizations—e.g., that the City intended to deter criminal activity by "striking fear into the general community by show of force" (Dkt. No. 28 ¶ 148), and that Officer Mendez "wanted Mr. Ramirez to live with the feelings of degradation and shame of being pulled out of his vehicle in public during the day" (*id.* ¶ 149)—but no new facts. Mr. Ramirez's conclusory assertions of intent are insufficient to support a claim for intentional infliction of emotional distress in the absence of facts that could plausibly support a reasonable inference that Officer Mendez and the City intentionally caused Mr. Ramirez emotional distress.

Accordingly, the Court dismisses Mr. Ramirez's tenth claim for relief.

### C.     Qualified Immunity

Officer Mendez indicates that he will answer Mr. Ramirez's claim for unlawful detention and has not raised qualified immunity as a defense to that claim at this stage of the proceeding. Dkt. No. 29 at 12. Likewise, because the Court dismisses Mr. Ramirez's claim for use of excessive force for failure to state a claim, the Court need not address whether Officer Mendez is entitled to qualified immunity on that claim.

Having determined that the SAC states a claim for violation of Mr. Ramirez's right to equal protection under the Fourteenth Amendment and a claim for denial of equal benefits under § 1981, the Court must now address Officer Mendez's argument that the rights asserted in these claims were not "clearly established" at the time of the alleged misconduct. *Pearson,* 555 U.S. at 232. "To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 967 (9th Cir. 2010).

The right asserted by Mr. Ramirez in his equal protection claim is the right to be free from selective enforcement of the law based on his race or perceived national origin. *See supra* Section III.A.1. Both the Supreme Court and the Ninth Circuit have long recognized that "the constitution prohibits selective enforcement of the law based on considerations such as race." *Wren*, 517 U.S.

United States District Court
Northern District of California

1   at 813; *Elliot-Park v. Manglona*, 592 F.3d 1003, 1009 (9th Cir. 2010) ("It's been long established

2   that state employees can't treat individuals differently on the basis of their race.").

3          The right asserted by Mr. Ramirez in his denial of equal benefits claim is the right to be

4   free from intentional discrimination based on race or national origin in interactions with the police.

5   *See supra* Section III.A.4.  The Ninth Circuit has "long held that a public official is not entitled to

6   qualified immunity in a § 1981 case if he is accused of intentional racial discrimination." *See*

7   *Yoshikawa*, No. 21-15970, 2022 WL 2912474 at *7 (citing *Gutierrez v. Mun. Ct. of Se. Jud. Dist.,*

8   *L.A. Cnty.*, 838 F.2d 1031, 1050–51 (9th Cir. 1988) (*vacated on mootness grounds*); *Lowe v. City*

9   *of Monrovia*, 775 F.2d 998, 1011 (9th Cir. 1985)).  "The constitutional right to be free from such

10  invidious discrimination is so well established and so essential to the preservation of our

11  constitutional order that all public officials must be charged with knowledge of it." *Id.* (citing

12  *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir. 1980)).

13         On the facts alleged in the SAC, the Court finds that Officer Mendez is not entitled to

14  qualified immunity on Mr. Ramirez's equal protection or § 1981 claim.

15  **IV.    LEAVE TO AMEND**

16         "[A] district court should grant leave to amend even if no request to amend the pleading

17  was made, unless it determines that the pleading could not possibly be cured by the allegation of

18  other facts."  *Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012) (citation omitted).

19  Here, Mr. Ramirez requests leave to amend.  *See* Dkt. No. 34 at 25.  However, he has not

20  identified any proposed amendments that might cure the deficiencies discussed above.

21         Mr. Ramirez has now twice amended his complaint.  In these circumstances, the Court

22  concludes that further amendment would be futile.  *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721,

23  724 (9th Cir. 1987) ("[C]ourts have discretion to deny leave to amend a complaint for futility.")

24  (citation and quotation marks omitted); *see also, e.g., Hunger v. Lassner*, No. 12-00549 LEK-

25  RLP, 2014 WL 12599630 (D. Haw. Apr. 30, 2014) (dismissing claim with prejudice under similar

26  circumstances).

27  **V.     CONCLUSION**

28         The Court grants defendants' motion to dismiss the following claims without leave to

United States District Court
Northern District of California

United States District Court
Northern District of California

1   amend: Claims 3 and 4 (Article I, §§ 7(a) and 13 of the California Constitution), Claim 5 (Bane

2   Act), Claim 6 (Battery), Claim 8 (Fourth Amendment (Excessive Force)), Claim 10 (Intentional

3   Inflictions of Emotional Distress), and Claim 11 (Ralph Act).

4          The Court denies defendants' motion to dismiss the following claims: Claim 1 (Fourteenth

5   Amendment (Equal Protection)), Claim 2 (Denial of Equal Benefits under 42 U.S.C. § 1981), and

6   Claim 9 (*Monell* Claim, Fourth Amendment (Unlawful Detention) and Fourteenth Amendment

7   (Equal Protection)).

8          The Court further concludes that, on this record, Officer Mendez is not entitled to qualified

9   immunity with respect Mr. Ramirez's equal protection and equal benefits claims.

10         **IT IS SO ORDERED.**

11   Dated: August 5, 2022

12

13                                                        *Virginia K. DeMarchi*

14                                                        VIRGINIA K. DEMARCHI
                                                         United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28